**MASADA INVESTMENT CORP., Milton A. Turner, Masada-Memphis Venture, a Tennessee limited partnership, and WTFF Associates, a Tennessee limited partnership, Third Party Plaintiffs-Appellants,**

v.

**Robert M. ALLEN, Third Party Defendant-Appellee.**

Supreme Court of Tennessee, at Jackson.

Aug. 12, 1985.

W. Rowlett Scott, Paul E. Prather, Memphis, for appellants; Armstrong Allen Braden Goodman McBride & Prewitt, of counsel.

Alan R. Strain, Memphis, for appellee; Wilson, McRae, Ivy, Seiver, McTyier & Strain, of counsel.

## OPINION

COOPER, Chief Justice.

The sole issue for review is whether the third-party defendant, Robert M. Allen, a Texas attorney, had sufficient minimum contacts with Tennessee to confer *in personam* long-arm jurisdiction. The Court of Appeals affirmed the chancellor's holding that Allen had insufficient contacts with Tennessee to sustain jurisdiction. We reverse the Court of Appeals and hold that Allen had sufficient contacts with Tennessee to confer jurisdiction upon the courts of this state.

This suit arises out of a real estate transaction begun in 1981 when Richard J. Hockert, a Texas real estate broker and president of Richard J. Hockert & Company, learned that the United American Bank Building in Memphis was for sale. The UAB building was owned by WTFF Associates (WTFF), a Tennessee limited partnership, which had acquired it by warranty deed from Masada Investment Corporation, a Tennessee corporation, which held title to the property on behalf of and for the benefit of Masada-Memphis Venture, another Tennessee limited partnership. Milton Turner was a general partner in WTFF Associates and Masada-Memphis Venture, and was president of Masada Investment Corporation. Hockert planned to purchase the building from WTFF for $4,650,000 and then sell the building to the plaintiff, University Real Estate Investors-81 (University), a California partnership, for $4,850,000. At some point during negotiations Hockert called upon Allen, an experienced real estate attorney, to assist him. Allen had no financial interest in the sale itself and was compensated solely by Hockert.

Once the general terms of the sale were agreed to, Hockert requested that Allen prepare the warranty deed and the agreement of sale and purchase for the property. Wendell Thomas, an attorney for WTFF, sent Allen a preliminary title insurance binder which had attached to it the wrong legal description of the property to be sold. In addition to the UAB Building, the description included an adjacent lot. Allen was informed by Thomas of this discrepancy, and was told that a correct legal description would be forthcoming. At this time it was decided to restructure the transaction to decrease tax liability by eliminating Hockert as purchaser from WTFF and seller to University, having the sale made directly between WTFF and University, and paying Hockert a $200,000 consulting fee.

In August of 1981, Allen sent the warranty deed and the agreement of sale and purchase which he had drafted to Tennessee for execution by WTFF. The erroneous description was still attached to these documents. Allen, WTFF, and University were furnished the correct legal description a few days later, but the correct description was never substituted for the incorrect one. The documents were executed by WTFF in Knoxville and were returned to Allen to be held in trust until closing. For the convenience of the parties the closing was held in Allen's office on September 11, 1981.

A few weeks after closing it was discovered that WTFF had conveyed to University, by reason of the erroneous description, the lot adjacent to the UAB Building. It also was discovered that Masada Investment Corporation had granted UAB an option to purchase the lot which had mistakenly been conveyed to University.

University brought suit to quiet title and to recover damages in the Chancery Court of Shelby County. The named defendants were WTFF Associates, Masada-Memphis Venture, Masada Investment Corp., and Milton Turner. WTFF filed a counterclaim seeking reformation due to mutual mistake or fraud. The defendants then filed a

third-party action against Hockert & Co., Richard J. Hockert, and Robert M. Allen, charging them with negligence and breach of trust in handling the closing by using the incorrect description of the property. The third-party defendants filed motions to dismiss on the grounds that the Tennessee court lacked *in personam* jurisdiction. This motion was denied as to Hockert, but was granted as to Allen. As noted, the Court of Appeals affirmed the chancellor and review was granted in this court.

In asserting their claim against Hockert and Allen, the third-party plaintiffs alleged that they were subject to service of process pursuant to T.C.A. § 20–2–214, the Tennessee long-arm statute. That statute states, in relevant part:

20–2–214. Jurisdiction of persons unavailable to personal service in state— Classes of actions to which applicable.— (a) Persons who are nonresidents of Tennessee ... are subject to the jurisdiction of the courts of this state as to any action or claim for relief arising from:

(1) The transaction of any business within the state;

(2) Any tortious act or omission within this state;

.    .    .    .    .

.    .    .    .    .

(5) Entering into a contract for services to be rendered or for materials to be furnished in this state;

(6) Any basis not inconsistent with the constitution of this state or of the United States.

■■■■ In determining whether or not a state can assert long-arm jurisdiction, due process requires that a non-resident defendant be subjected to a judgment *in personam* only if he has minimum contacts with the forum such that "the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). However, the absence of physical contacts will not defeat *in personam* jurisdiction where a commercial actor purposefully directs his activities toward citizens of the forum State and litigation results from injuries arising out of or relating to those activities. *Burger King Corp. v. Rudzewicz,* —— U.S. ——, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528 (1985). In such a case, "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).

■■ T.C.A. § 20–2–214 was considered a "single act" statute, one in which jurisdiction was assumed only over causes of action arising out of the defendant's activities in the state, until the addition of subsection (6) in 1972. A three-pronged test had been developed to determine the outer limits of personal jurisdiction based on a single act: the defendant must purposefully avail himself of the privilege of acting in or causing a consequence in the forum State; the cause of action must arise from the defendant's activities there; and defendant's acts or consequences must have a substantial connection with the forum to make the exercise of jurisdiction reasonable. *Southern Machine Co. v. Mohasco Industries, Inc.,* 401 F.2d 374, 381 (6th Cir.1968). Subsection (6) changed the long-arm statute from a "single act" statute to a "minimum contacts" statute which expanded the jurisdiction of Tennessee courts to the full limit allowed by due process. *Shelby Mutual Ins. Co. v. Moore,* 645 S.W.2d 242, 245 (Tenn.App.1981). That decision, quoting extensively from *Gullett v. Qantas Airways Ltd.,* 417 F.Supp. 490 (M.D.Tenn. 1975), noted that the *Mohasco* test was now too restrictive. The *Moore* court noted that three primary factors are to be considered in determining whether the requisite minimum contacts were present: the quantity of the contacts, their nature and quality, and the source and connection of the cause of action with those contacts. Two lesser factors to be considered are the interest of the forum State and convenience. The *Moore* court concluded:

The phrase "fair play and substantial justice" must be viewed in terms of whether it is fair and substantially just to both parties to have the case tried in the state where the plaintiff has chosen to bring the action. In each case, the quality and nature of those activities in relation to the fair and orderly administration of the law must be weighed. As stated above in *Qantas*, this must involve some subjective value judgment by the courts.

645 S.W.2d at 246.

■ After applying these considerations to the facts of this case, we hold that Allen had sufficient minimum contacts with Tennessee to justify jurisdiction here. While Allen never entered Tennessee and had no direct financial interest in the sale of the UAB Building, his work was a vital component of that transaction. At his client's request, Allen prepared the legal documents controlling the transfer of ownership of the UAB Building. Allen did not merely record what Hockert instructed him to, but took independent action in fulfilling his obligations. This included conversing with WTFF's attorney in Knoxville on several occasions, drafting the documents to be in accord with Tennessee law, sending the completed documents into Tennessee for execution, and then holding these same documents until closing in his office. Allen knew that his legal work would control the sale of several million dollars of Tennessee realty which was being sold by a Tennessee limited partnership subject to the laws of Tennessee. These documents were to be recorded and given full legal effect in Tennessee. By wilfully and knowingly choosing to prepare legal documents which would be filed in Tennessee and be of great consequence here, Allen purposely availed himself of the privilege of doing business within this state. This litigation itself serves to highlight the importance of Allen's work product. While Allen had limited physical contact with this forum, he purposefully directed his activities toward the citizens of this state and his negligent actions resulted in injury here. Allen should have reasonably anticipated having to defend his actions in a Tennessee court. It follows that the nature and quality of Allen's contacts with Tennessee support the assertion of jurisdiction by this state, and that the litigation arose directly out of Allen's contacts with Tennessee. In addition, Tennessee has substantial interest in the outcome of this litigation and is the most convenient forum since this action involves a Tennessee defendant, WTFF, Tennessee property, and is controlled by Tennessee law.

In view of our holding that jurisdiction can be based upon subsection (6) of the long-arm statute, it is unnecessary to discuss the applicability of sections (1), (2), and (5) which the third-party plaintiffs also asserted as grounds for jurisdiction.

The judgment of the Court of Appeals, affirming the dismissal of the third-party plaintiffs' cause of action against Robert M. Allen is reversed. This cause is remanded for proceedings consistent with this opinion. Costs are taxed to the third-party defendant.

FONES and HARBISON, JJ., concur.

BROCK, J., concurs with opinion.

DROWOTA, J., dissents.

BROCK, Justice, concurring.

I concur in the decision of the majority that the service of process upon third party defendant Robert M. Allen, an attorney who resides and practices law in Texas, is properly sustained under the Tennessee long arm statute and the Fourteenth Amendment to the Constitution of the United States. I prefer, however, to rest my concurrence in the Court's decision upon the recent decisions and opinions of the United States Supreme Court in *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984); *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984); *Burger King Corporation v. Rudzewicz*, ⎯ U.S. ⎯, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) rather than upon the rationale set out in the majority opinion and its reliance upon *Shelby*

*Mut. Ins. Co. v. Moore,* Tenn.App., 645 S.W.2d 242 (1981). In the *Calder* case the Supreme Court upheld the jurisdiction in a libel action of the California court over the Florida defendants, based upon the service of process under the California long arm statute, applying the following rationale:

"Rather, their intentional, and allegedly tortious, actions were expressly aimed at California. Petitioner South wrote and petitioner Calder edited an article that they knew would have a potentially devastating impact upon respondent. And they knew that the brunt of that injury would be felt by respondent in the state in which she lives and works (California) and in which the *National Inquirer* has its largest circulation. Under the circumstances, petitioners must 'reasonably anticipate being haled into court there' to answer for the truth of the statements made in their article. *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S., at 297, 100 S.Ct., at 567; *Kulko v. Superior Court,* 436 U.S. 84, 97–98, 98 S.Ct. 1690, 1699–1700, 56 L.Ed.2d 132 (1978); *Shaffer v. Heitner,* 433 U.S. 186, 216, 97 S.Ct. 2569, 2586, 53 L.Ed.2d 683 (1977). An individual in California need not go to Florida to seek redress from persons who, though remaining in Florida, knowingly caused the injury in California." 104 S.Ct. at 1487.

Upholding the service of process under Florida's long arm statute on defendants residing in Michigan, the Supreme Court in *Burger King Corporation v. Rudzewicz, supra,* said, in pertinent part:

"The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations,' *International Shoe Company v. Washington,* 326 U.S., at 319. [, 66 S.Ct. at 159] By requiring that individuals have 'fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign,' *Shaffer v. Heitner,* 433 U.S. 186, 218 [, 97 S.Ct. 2569, 2587, 53 L.Ed.2d 683] (1977) (Stevens, J., concurring in judgment), the Due Process Clause 'gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit,' *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297[, 100 S.Ct. 559, 567, 62 L.Ed.2d 490] (1980).

"Where a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, this 'fair warning' requirement is satisfied if the defendant has 'purposefully directed' his activities at residents of the forum, *Keeton v. Hustler Magazine, Inc.,* 465 U.S. [770, ——, 104 S.Ct. 1473, 1479] (1984), and the litigation results from alleged injuries that 'arise out of or relate to' those activities, *Helicopteros Nacionales de Columbia, S.A. v. Hall,* 466 U.S. [408, ——, 104 S.Ct. 1868, 1872] (1984) . . . .

"We have noted several reasons why a forum legitimately may exercise personal jurisdiction over a nonresident who 'purposefully directs' his activities toward forum residents. A state generally has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors. *Id.,* [*McGee v. International Life Insurance Co.,* 355 U.S. 220] at 223; [78 S.Ct. 199 at 201, 2 L.Ed.2d 223 (1957) ]; *see also Calder v. Jones, supra,* [465 U.S.] at —— [104 S.Ct. at ——] . . . .

"Notwithstanding these considerations, the constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum State. *International Shoe Company v. Washington, supra,* [326 U.S.] at 316. [66 S.Ct. at 158.] Although it has been argued that foreseeability of causing *injury* in another State should be sufficient to establish such contacts there when policy considerations so require, the Court has consistently held that this kind of foreseeability is not a single 'sufficient benchmark' for exercising personal jurisdiction. *World-Wide*

*Volkswagen Corp. v. Woodson,* 444 U.S., at 295. [100 S.Ct. at 566.] Instead, 'the foreseeability that is critical to due process analysis ... is that the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there.' *Id.,* at 297. [100 S.Ct. at 567.] In defining when it is that a potential defendant should 'reasonably anticipate' out-of-state litigation, the Court frequently has drawn from the reasoning of *Hanson v. Denckla,* 357 U.S. 235, 253 [78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283] (1958):

> 'The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'

"This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, *Keeton v. Hustler Magazine, Inc., supra* [465 U.S.] at —— [104 S.Ct. at ——]; *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S., at 299, [100 S.Ct. at 568,] or of the 'unilateral activity of another party or a third person,' *Helicopteros Nacionales de Columbia, S.A. v. Hall, supra* [466 U.S.] at —— [104 S.Ct. at ——]. Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State....

"Jurisdiction in these circumstances may not be avoided merely because the defendant did not *physically* enter the forum State. Although territorial presence frequently will enhance a potential defendant's affiliation with a State and reinforce the reasonable foreseeability of suit there, it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted. So long as a commercial actor's efforts are 'purposefully directed' toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there. *Keeton v. Hustler Magazine, Inc., supra* [465 U.S.] at —— [104 S.Ct. at ——]; *see also Calder v. Jones,* 465 U.S. at —— [104 S.Ct. at ——]; *McGee v. International Life Insurance Co.,* 355 U.S., at 222–223. [78 S.Ct. at 200–201.] Cf. *Hoopeston Canning Co. v. Cullen,* 318 U.S., at 313, 317 [63 S.Ct. 602 at 605, 87 L.Ed. 777] (1943)." *Burger King Corporation v. Rudzewicz,* 105 S.Ct. at 2181–2184.

Assuming that my understanding of the Supreme Court's recent opinions, above discussed, is correct, I hold that service under the Tennessee long arm statute on the Texas lawyer in this case is properly sustainable because his act of incorporating an inaccurate description of the land in a warranty deed used to transfer property located in Tennessee is action purposefully directed toward Tennessee property owners and is "such that he should reasonably anticipate being haled into court there." Upon this basis I concur in the decision of the majority of the Court upholding long arm jurisdiction in this case.

DROWOTA, Justice, dissenting.

I am in agreement with the chancellor and the unanimous opinion of the Court of Appeals who concluded that Robert Allen did not have the requisite minimum contacts with Tennessee so as to confer upon the courts of the state *in personam* jurisdiction over him.

The majority opinion points out that Allen was employed by Hockert to prepare the warranty deed and the agreement of sale and purchase for the property. These were services to be performed by Allen for Hockert alone, Allen's Texas client. The other parties to the transaction employed

separate legal counsel to represent their interests. Allen did nothing more than to enter into an attorney-client relationship in the state of Texas.

In determining whether Allen had sufficient minimum contacts with Tennessee, it is critical that the actions of Allen and Hockert, his Texas client, be analyzed separately. As the United States Supreme Court stated in *Rush v. Savchuk,* 444 U.S. 320, 332, 100 S.Ct. 571, 579, 62 L.Ed.2d 516, 527 (1980), "the parties' relationships with each other may be significant in evaluating their ties to the forum. The requirements of *International Shoe,* however, must be met as to each defendant over whom a state court exercises jurisdiction." There is no question that minimum contacts exist between Hockert and Tennessee. He came to Tennessee on numerous occasions to look at the property, to inspect the books and records pertaining to the property and to negotiate a purchase price. Hockert initially offered to purchase the property from the Tennessee owner and later became its sales representative or broker. It is obvious that Hockert purposefully availed himself of the privilege of doing business in the forum state and that "the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 102 (1945). *See Southern Machine Co. v. Mohasco Industries, Inc.,* 401 F.2d 374 (6th Cir.1968).

Third-Party Defendant Allen is in an entirely different position. He never came to Tennessee but transmitted documents to Tennessee at the insistence and on behalf of his Texas client. The services he rendered were performed in Texas for his Texas client. His only contacts with Tennessee were sending the contract and deed to the seller in Knoxville and having telephone conversations with the seller's attorney in Knoxville. The transaction was closed in Texas. Allen's role in the transaction was essentially that of legal counsel

to the broker. The record fails to show any tortious act or omission between Allen and the third-party Plaintiffs. All the services performed by Allen were performed for his Texas client in Texas, which state is the proper forum as to Allen.

The majority asserts that Allen knew that his legal work would control the sale of several million dollars of Tennessee realty which was being sold by a Tennessee limited partnership. The majority then concludes that "[b]y wilfully and knowingly choosing to prepare legal documents which would be filed in Tennessee and be of great consequence here, Allen purposefully availed himself of the privilege of doing business within this State." While I would agree with the factual statements, I do not see how the conclusion necessarily follows. In *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283, 1298 (1958), the United States Supreme Court stated that "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." This requirement ensures that a defendant will not be haled into a foreign jurisdiction solely as a result of "random, fortuitous, or attenuated contacts." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 299, 100 S.Ct. 559, 568, 62 L.Ed.2d 490, 502 (1980), or of the unilateral activity of another party or a third person, *Helicopteros Nacionales de Columbia, S.A. v. Hall,* 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). The Supreme Court has recently stated that "[j]urisdiction is proper ... where the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State." *Burger King Corp. v. Rudzewicz,* — U.S. ——, 105 S.Ct. 2174, 2183–2184, 85 L.Ed.2d 528 (1985) (emphasis in original), citing *McGee v. International Life Insurance Co.,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957).[1] In my opinion the record in

---

1. In *Burger King,* two Michigan residents, Rudzewicz and MacShara, entered into a franchise

agreement with Burger King, a Florida corporation. Among other things, the franchise agree-

this case fails to disclose that Defendant *himself* took actions that created a substantial connection with the forum state nor does the record show that the Defendant invoked the benefits and protections of the laws of Tennessee. As previously stated Allen performed legal services in Texas for a Texas client. His sporadic telephone conversations and letters to Tennessee attorneys and his sending of documents prepared in Texas to Tennessee are insufficient minimum contacts upon which courts of this State may base *in personam* jurisdiction. Because the Defendant did not "purposefully avail himself of the privilege of doing business" in Tennessee, the other parts of the *Mohasco* test need not be addressed. The cases are in agreement that if the first requirement is met then the other two naturally follow. *See, e.g., Nicholstone Book Bindery, Inc. v. Chelsea House Publishers*, 621 S.W.2d 560, 564 (Tenn.1981).

The decisions of the United States Supreme Court discussed previously, beginning with *Hanson v. Denckla, supra*, can be read "as a stopping place ... on what had been the road toward nationwide in personam jurisdiction for state courts." Kurland, *The Supreme Court, the Due Process Clause and the In Personam Jurisdiction of State Courts—From Pennoyer to Denckla: A Review*, 25 U.Chi. L.Rev. 569, 622 (1958). The majority decision in this case goes much farther than this Court has ever gone in conferring *in personam* jurisdiction. *Shelby Mutual Ins. Co. v. Moore*, 645 S.W.2d 242 (Tenn.App.1981), cited extensively in the majority opinion, is readily distinguishable. The defendants were Tennessee residents at the time the cause of action arose but moved to Missouri before service of process could be made. They had rented airplanes in Tennessee on several occasions. The Court of Appeals

stated that there was "no doubt that the defendants transacted business in this state and that they entered into a contract for services to be rendered and for materials to be furnished in this state and that Tennessee has an interest in resolving this litigation." 645 S.W.2d at 244. The litigation grew out of a crash of an airplane rented in Tennessee.

In the case at bar, Third-Party Defendant Allen entered into an attorney-client relationship in Texas with a Texas resident. Allen had no financial interest in the sale itself and was paid a fee by Hockert for legal services rendered. Allen did not "purposefully derive benefit" from his above described activities, nor did he purposefully establish "minimum contacts" in Tennessee. For the reasons heretofore stated, I would affirm the judgments of the courts below and dismiss the cause of action against Allen.

## OPINION ON PETITIONS TO REHEAR

COOPER, Chief Justice.

The parties to this appeal have filed petitions to rehear, voicing concern that factual statements in the opinion of the court are decisive of disputed issues affecting the merits of the case. Each of the parties asks this court to delete or modify statements in the opinion to eliminate such a possibility.

■ The appeal in this case is from a judgment sustaining a Rule 12 motion to dismiss for lack of jurisdiction over the person of the third-party defendant-appellee, Robert M. Allen. As a consequence, certain factual statements in the opinion are based on allegations of the parties. An iteration of those facts by the court was not intended to be and is not finally deter-

---

ment obligated Rudzewicz personally to payments exceeding $1 million. The defendants communicated directly with the Miami office in forming the contracts. Jurisdiction over these defendants was therefore entirely proper. Query however if the defendants had retained Michigan counsel to finalize the franchise agreement.

I am confident the Court would find jurisdiction over that individual to be improper. The defendants in *Burger King* more closely resemble third-party Defendant Hockert than they do Allen. Nothing in *Burger King* compels the result reached in the case at bar.

minative of disputed factual issues going to the merits of the complaint or the third-party complaint. All that is decided by the court is that the third-party defendant-appellee, Robert M. Allen, had sufficient minimum contacts with Tennessee to confer *in personam* jurisdiction on the courts of this state under the long-arm statute.

In his petition to rehear, Mr. Allen also reiterates his basic argument that the material facts of the case do not support a determination that his contacts with Tennessee meet the requirements of due process. This issue has been decided contrary to the insistence of Mr. Allen, and a majority of the court sees no basis in the record to justify a change in its decision.

The petitions to rehear are denied, with each petitioner bearing the costs attendant to the filing of his petition.

FONES, BROCK and HARBISON, JJ., concur.

DROWOTA, J., dissents.