In re TRUST UNDER WILL OF Rose FRUMKIN For and on Behalf of Alfred FRUMKIN Dated June 21, 1988.

Alfred FRUMKIN, Petitioner–Appellant,

v.

FIRST UNION NATIONAL BANK OF FLORIDA, Trustee, Respondent–Appellee.

Court of Appeals of Tennessee, Eastern Section.

Nov. 2, 1993.

Permission to Appeal Denied by Supreme Court March 28, 1994.

Paul T. Coleman and Nelwyn I. Rhodes, Heiskell, Donelson, Bearman, Adams, Williams & Kirsch, Knoxville, for petitioner-appellant.

Michael H. Fitzpatrick and John E. McDonald, Jenkins & Jenkins, Knoxville, for respondent-appellee.

## OPINION

SANDERS, Presiding Judge (Eastern Section).

Petitioner appeals from a chancery decree dismissing his petition for removal of a trustee and appointment of a successor.

Mrs. Rose Frumkin, mother of Petitioner–Appellant Alfred Frumkin, died testate in the State of Florida in 1989. As pertinent here, her will created a spendthrift trust for the benefit of the Petitioner with him as the sole income beneficiary of the trust during his lifetime. The residue of the trust, upon the death of Petitioner, is to go "to my then living children." The National City Trust Company (an Ohio bank) was named as trustee under the will.

The Respondent–Appellee, First Union National Bank of Florida (a Florida bank) became the successor trustee of the trust. Mrs. Rose Frumkin was a resident of Florida at the time of her death and her will was admitted to probate in the Florida courts.

It appears the Petitioner was also a resident of the State of Florida at the time of his mother's death but is now a resident of Tennessee. One of the remainder beneficiaries is a resident of the State of Florida and the other remainder beneficiary is a resident of New Jersey.

In 1992 the Petitioner filed a petition in the chancery court pursuant to T.C.A. § 35–1–106 to have Respondent First Union National Bank of Florida (First Union) removed as trustee and First Tennessee Bank National Association, Knoxville, Tennessee (First Tennessee) appointed as successor trustee. Petitioner also asked the court to transfer

the situs of the trust from Florida to Tennessee. Petitioner alleged First Union violated its fiduciary duty by failing to timely account for income and expenses, to timely disburse income, and to communicate and cooperate with Petitioner. Petitioner did not allege he had been damaged by Respondent's nonfeasance nor did he allege he was entitled to an accounting.

First Union responded to the complaint by entering a limited appearance to file a motion to dismiss pursuant to Rule 12.02, TRCP. In its motion, First Union alleged it is a Florida corporation doing business in the State of Florida; it is not registered to do business in the State of Tennessee. It said it serves as trustee of the trust created by the will of Rose Frumkin which is governed by the laws of the State of Florida. It maintained First Union has not had sufficient minimum contact with the State of Tennessee in its administration as trustee of the trust or in any other business activity to give the courts of Tennessee personal jurisdiction over it as trustee. In support of its motion, First Union filed the affidavit of Robert G. Albright, Vice-president and Senior Trust Officer. His affidavit confirmed all the allegations in the motion. Attached to the affidavit was a list of checks written to the Petitioner by the trust for the years 1990 through 1992. Of these checks, five had been mailed to Mr. Frumkin in Tennessee and the rest of the checks had been mailed to his bank in Cincinnati, Ohio. Also attached to the affidavit was a copy of all correspondence to or from Mr. Frumkin regarding the trust. Only five of these letters were addressed to Tennessee. They covered the period of 1990 to 1992 and concerned such routine matters as transmittal letters for checks and showing the amount of income from the trust. Mr. Frumkin testified upon the hearing of the motion to dismiss.

The chancellor sustained the motion to dismiss. In doing so, as pertinent here, the chancellor said: "Based upon the pleadings, the testimony of Alfred Frumkin, the argument of counsel and the record as a whole, the Court is of the opinion that the State of Tennessee does not have in personam jurisdiction over First Union in its capacity as Trustee of the Alfred Frumkin Trust. The Court is particularly mindful in reaching this decision of *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), and specifically relies upon the case in reaching its decision."

■ The Petitioner has appealed, saying the court was in error. We cannot agree, and affirm for the reasons hereinafter stated.

We do not have a verbatim transcript of the testimony of Mr. Frumkin before the chancellor. The Appellant, however, filed a statement of the evidence pursuant to Rule 24(c), TRAP. It states the testimony of Mr. Frumkin to be as follows: "Mr. Frumkin was sworn and testified that he was a citizen and resident of Tennessee at the time First Union merged with Southeast Bank (the original substitute trustee to National City Trust Company, Cleveland, Ohio) and, as successor trustee to Southeast Bank, undertook administration of the trust. Mr. Frumkin continues to reside in Tennessee. He testified that all of his contacts and communications with First Union had been to or from his residence in Tennessee and that First Union furnished accountings and, from time to time, trust income checks to him in Tennessee."

T.C.A. § 20–2–214(a)(6) is the Tennessee long-arm statute which is controlling in the case at bar. As pertinent here, it gives Tennessee jurisdiction over nonresidents "as to any action or claim for relief arising from ... (6) any basis not inconsistent with the constitution of this state or of the United States." Accordingly, Tennessee courts may exercise jurisdiction over First Union if it would not violate its constitutional due process protections.

In the case of *Masada Investment Corp. v. Allen*, 697 S.W.2d 332, 334 (Tenn.1985) the court provided the framework for analyzing the boundaries of due process under T.C.A. § 20–2–214(a)(6) as follows:

T.C.A. § 20–2–214 was considered a 'single act' statute, one in which jurisdiction was assumed only over causes of action arising out of the defendant's activities in the state, until the addition of subsection (6) in 1972. . . . Subsection (6) changed the long-arm statute from a 'single act' statute

to a 'minimum contacts' statute which expanded the jurisdiction of Tennessee courts to the full limit allowed by due process ... three primary factors are to be considered in determining whether the requisite minimum contacts were present: the quantity of the contacts, their nature and quality, and the source and connection of the cause of action with those contacts.

■ The general formulation of the minimum contacts rule is that a nonresident defendant must have "minimum contacts" with Tennessee such that exercising jurisdiction would not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. State of Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945).

We concur with the holding of the chancellor that *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958) is controlling in the case at bar. The facts in *Hanson* are very analogous to the case at bar. In 1935 Dora Donner, whose domicile was the State of Pennsylvania, created a trust in the State of Delaware. She named Wilmington Trust Co., a Delaware corporation, as trustee. The corpus of the trust was composed of securities. Mrs. Donner reserved the income from the trust for her lifetime. She stated the remainder should be paid to such person or upon such trust as she should appoint by *inter vivos* or testamentary instruments. Soon after the trust was created, Mrs. Donner exercised her power of appointment. Some five years later she became domiciled in the State of Florida where she lived until her death some eight years later. About a year prior to her death, she executed a will. On the same date she executed another *inter vivos* power of appointment under the trust. After her death, her will was admitted to probate in the Florida courts. Subsequently, beneficiaries of the residuary clause of the will petitioned a Florida chancery court for a declaratory judgment "concerning what property passed under the residuary clause" of the will. They challenged the validity of the Delaware trust. They joined the Wilmington Trust Co., as trustee, along with numerous other parties, as a defendant.

After the Florida litigation began, but before the entry of a decree, the executrix of Mrs. Dommer's will instituted a declaratory judgment in Delaware to determine who was entitled to the trust assets in the state. The courts of Florida and Delaware held adversely to each other on the issues. The Florida court held the appointments made under the trust were void and the funds in the trust passed under the will. The Delaware court held the trust and appointments made under the trust were valid and the funds passed under the trust. The Delaware court held the Florida decree was not binding for purposes of full faith and credit because the Florida court had no personal jurisdiction over the trustee of the trust or the *res.*

The Supreme Court of the United States granted certiorari in the two cases. In its review of the issues for determination, the Court said: "The issues for our decision are *first,* whether Florida erred in holding that it had jurisdiction over the nonresident defendants, and *second,* whether Delaware erred in refusing full faith and credit to the Florida decree."

We quote at length from the *Hanson* Court's opinion as it relates to the requirements for "in personam jurisdiction" as it covers each of the Appellant's arguments on that issue in the case at bar. As pertinent here, the Court said:

> Appellees' stronger argument is for *in personam* jurisdiction over the Delaware trustee. They urge that the circumstances of this case amount to sufficient affiliation with the State of Florida to empower its courts to exercise personal jurisdiction over this nonresident defendant. ....
>
> \* \* \* \* \* \*
>
> As technological progress has increased the flow of commerce between States, the need for jurisdiction over nonresidents has undergone a similar increase. At the same time, progress in communications and transportation has made the defense of a suit in a foreign tribunal less burdensome. In response to these changes, the requirements for personal jurisdiction over nonresidents have evolved from the rigid rule of *Pennoyer v. Neff,* 95 U.S. 714, 24 L.Ed. 565, to the flexible standard of *Interna-*

tional Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95. But it is a mistake to assume that this trend heralds the eventual demise of all restrictions on the personal jurisdiction of state courts. See Vanderbilt v. Vanderbilt, 354 U.S. 416, 418, 77 S.Ct. 1360, 1362, 1 L.Ed.2d 1456. Those restrictions are more than a guarantee of immunity from inconvenient or distant litigation. They are a consequence of territorial limitations on the power of the respective States. However minimal the burden of defending in a foreign tribunal, a defendant may not be called upon to do so unless he has had the "minimal contacts" with that State that are a prerequisite to its exercise of power over him. See International Shoe Co. v. State of Washington, 326 U.S. 310, 319, 66 S.Ct. 154, 159, 90 L.Ed. 95.

We fail to find such contacts in the circumstances of this case. The defendant trust company has no office in Florida, and transacts no business there. None of the trust assets has ever been held or administered in Florida, and the record discloses no solicitation of business in that State either in person or by mail. Cf. International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95; McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223; Travelers Health Ass'n v. Com. of Virginia ex rel. State Corporation Comm., 339 U.S. 643, 70 S.Ct. 927, 94 L.Ed. 1154.

The cause of action in this case is not one that arises out of an act done or transaction consummated in the forum State. ....

[T]his action involves the validity of an agreement that was entered without any connection with the forum State. The agreement was executed in Delaware by a trust company incorporated in that State and a settlor domiciled in Pennsylvania. The first relationship Florida had to the agreement was years later when the settlor became domiciled there, and the trustee remitted the trust income to her in that State. From Florida Mrs. Donner carried on several bits of trust administration. ... But the record discloses no instance in which the trustee performed any acts in Florida. ... Consequently, this suit cannot be said to be one to enforce an obligation that arose from a privilege the defendant exercised in Florida. Cf. International Shoe Co. v. State of Washington, 326 U.S. 310, 319, 66 S.Ct. 154, 159, 90 L.Ed. 95. ....

\* \* \* \* \* \*

The execution in Florida of the powers of appointment under which the beneficiaries and appointees claim does not give Florida a substantial connection with the contract on which this suit is based. .... The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws. International Shoe Co. v. State of Washington, 326 U.S. 310, 319, 66 S.Ct. 154, 159, 90 L.Ed. 95.

The settlor's execution in Florida of her power of appointment cannot remedy the absence of such an act in this case.

355 U.S. at 250–254, 78 S.Ct. at 1238–1240.

The issues are found in favor of the Appellee. The decree of the chancellor is affirmed. The cost of this appeal is taxed to the Appellant and the case is remanded to the trial court for any further, necessary proceedings.

FRANKS and McMURRAY, JJ., concur.