IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
JULY 24, 2012 Session

PRECISION CASTINGS OF TENNESSEE, INC. v. H AND H
MANUFACTURING COMPANY, INC.

Appeal from the Circuit Court for Sumner County
No. 2011CV447     C. L. Rogers, Judge

No. M2012-00334-COA-R3-CV - Filed August 22, 2012

The defendant, a Pennsylvania corporation, challenges the trial court's decision to exercise personal jurisdiction over the defendant.  Based upon the defendant's initiation of a contractual relationship with a Tennessee manufacturer and its entry into a contract providing that Tennessee law would control, we affirm the trial court's decision to exercise jurisdiction in this dispute arising out of the contract.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which PATRICIA J. COTTRELL, P.J., and FRANK G. CLEMENT, JR., J., joined.

Patrick D. Witherington, Nashville, Tennessee, for the appellant, H and H Manufacturing Company, Inc.

Arthur E. McClellan, Gallatin, Tennessee, for the appellee, Precision Castings of Tennessee, Inc.

OPINION

FACTUAL AND PROCEDURAL BACKGROUND

Precision Castings of Tennessee, Inc. ("Precision"), a Tennessee corporation, filed suit against H and H Manufacturing Company, Inc. ("HHM"), a Pennsylvania corporation, on April 14, 2011.  According to the complaint, Precision manufactured and delivered to HHM metal castings and molds to produce castings, and HHM failed to pay for them.  Precision requested judgment in the amount of $56,789.51 plus pre-judgment and post-judgment interest and attorney fees.

An answer was filed by HHM's president on behalf of the corporation. Precision filed a motion to strike HHM's answer and for a default judgment. HHM hired an attorney, who filed a first amended answer raising the defense of lack of personal jurisdiction. The trial court entered an order finding that HHM's original pro se answer was without legal effect and that its amended answer violated the Tennessee Rules of Civil Procedure. The court ordered that HHM's answer be struck and entered a default judgment against HHM for $56,789.51. HHM filed a motion to alter or amend, however; and the trial court granted the motion and set aside the default judgment.

In November 2011, HHM filed a motion to dismiss and for judgment on the pleadings based upon the lack of factual allegations in the complaint to support personal jurisdiction and under the doctrine of forum non conveniens. In support of its motion, HHM filed the affidavit of its president, Tom Tomei. In that affidavit, Tomei stated that, in March 2010, "after communicating via telephone, e-mail, and other electronic means, [Precision] agreed to supply [HHM] with certain metal parts (castings and molds)." One of HHM's customers in New York had referred it to Precision. Mr. Tomei stated that no HHM employees went to Tennessee with regard to these transactions. He further asserted that the parts manufactured by Precision were designed and tested in Pennsylvania and that Precision "did no independent testing of the parts in Tennessee as required by the order specifications." HHM took the position that the parts manufactured by Precision did not meet the design specifications and "the parts were rejected as unacceptable in Pennsylvania." Mr. Tomei's affidavit also includes the following statements:

> [HHM] does not have any customers in Tennessee. . . . Other than the events at issue in this dispute, [HHM] has not had any dealings with any Tennessee entity or person. [HHM] never agreed to come to Tennessee for any reason related to the transactions at issue in this dispute. There was no prior business relationship between the parties.

> [HHM] does not target or purposely direct its activities toward citizens of Tennessee. [HHM] has not derived any revenue from people or entities in Tennessee, nor does defendant conduct any business enterprise in Tennessee.

Mr. Tomei estimated that HHM would need to bring as many as 12 witnesses, including experts, from Pennsylvania to testify at trial.

In opposing HHM's motion to dismiss, Precision filed the affidavit of its president, T. Allen Bransford. This affidavit includes the following pertinent statements:

Without any solicitation on behalf of [Precision], shortly before December 2009, [HHM] made electronic contact with [Precision] and asked [Precision] to give [HHM a] quote to produce the part in question. Pursuant to that request, on December 2, 2009, [Precision] delivered PCT Quote No. 6521 to [HHM].... The quote contains the following language: "The rights and duties of the Buyer and the Sellers shall be governed by the laws of the State of Tennessee."

HHM accepted Precision's quote. According to Mr. Bransford, the product was tested by x-ray and chemical analysis in Wilson and Sumner counties in Tennessee; and Precision procured the physical analysis of the product from an independent lab in another state (not in Pennsylvania or Tennessee). Mr. Bransford asserted: "Each and every step of the manufacturing process for the product, as well as, its principal initial quality control was completed in Tennessee by or for [Precision]."

The trial court heard HHM's motion to dismiss on November 22, 2011. The court entered an order on November 30, 2011 denying the motion to dismiss. The court found that HHM had waived any claim of lack of personal jurisdiction, but also went on to find that the court had personal jurisdiction over HHM. Based upon HHM's affidavit, the court found that HHM "initiated contact with Plaintiff Tennessee manufacturer, communicating and ordering in Tennessee, to be manufactured in Tennessee." The court noted that all of HHM's contacts with Precision were by telephone, e-mail, and other electronic means.

HHM filed a motion for permission to pursue an interlocutory appeal on December 27, 2011. On January 3, 2012, HHM moved to continue the trial, which was set for January 11, 2012 (by agreed order). HHM argued that it needed more time to depose out-of-state witnesses. The trial court denied both motions on January 6, 2012.

The matter was heard by the trial court on January 11, 2012. The court denied HHM's renewed motion to continue the trial date. Mr. Bransford testified on behalf of Precision. HHM declined to put on proof, but renewed its motion for involuntary dismissal based on lack of personal jurisdiction and under the doctrine of forum non conveniens. In its final order entered on the day of the hearing, the trial court found HHM's motions to be without merit and determined that Precision was entitled to judgment in the total amount of $62,003.75.

On appeal, HHM argues that the trial court erred (1) in exercising personal jurisdiction over HHM, (2) in denying HHM's motion to dismiss under the doctrine of forum non conveniens, and (3) in denying HHM's motion to continue the trial date.

ANALYSIS

1.

We begin with the trial court's denial of HHM's motion to dismiss for lack of personal jurisdiction.

A court's decision regarding the exercise of personal jurisdiction involves a question of law. *Gordon v. Greenview Hosp., Inc.*, 300 S.W.3d 635, 645 (Tenn. 2009). Therefore, we review the trial court's denial of HHM's motion to dismiss de novo with no presumption of correctness. *See id.* The plaintiff has the burden of proving that the court has personal jurisdiction over the defendant. *Id.* at 643. In making our determination, we take the allegations in the complaint and supporting affidavits as true and resolve all factual disputes in the plaintiff's favor. *Id.* at 644.

What is necessary to establish a prima facie case of personal jurisdiction? Tennessee's long-arm statute, particularly Tenn. Code Ann. § 20-2-214(a), allows Tennessee courts to exercise in personam jurisdiction on any basis not inconsistent with the state or federal constitutions. *Chenault v. Walker*, 36 S.W.3d 45, 52 (Tenn. 2001). Due process principles require that "an out-of-state defendant can be subject to personal jurisdiction only if he has such minimum contacts with the forum state that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* at 53. Our courts recognize both general and specific jurisdiction.[1] The issue here is whether HHM had sufficient contacts to establish specific jurisdiction.

In the absence of continuous and systematic contacts sufficient to confer general jurisdiction, "personal jurisdiction exists if a 'commercial actor purposely directs his activities toward citizens of the forum state and litigation results from injuries arising out of or relating to those activities.'" *Id.* (quoting *J.I. Case Corp. v. Williams*, 832 S.W.2d 530, 532 (Tenn. 1992)). Tennessee courts have adopted three primary factors and two lesser factors to be considered in determining whether the necessary "minimum contacts" exist. *Masada Inv. Corp. v. Allen*, 697 S.W.2d 332, 334 (Tenn. 1985). The three primary factors are: (1) the quantity of the contacts, (2) the nature and quality of the contacts, and (3) the source and connection of the cause of action with the contacts. *Id.* at 334. The two lesser factors to be considered are the interest of the forum state and the convenience of the parties. *Id.*

---

[1]General jurisdiction exists "when a defendant has 'continuous and systematic contacts with the forum state sufficient to justify the state's exercise of judicial power with respect to any and all claims.'" *Aristech Chem. Int'l Ltd. v. Acrylic Fabricators Ltd.*, 138 F.3d 624, 627 (6th Cir. 1998) (quoting *Kerry Steel v. Paragon Indus., Inc.*, 106 F.3d 147, 149 (6th Cir. 1997). Specific jurisdiction confers jurisdiction only on claims that "arise out of or relate to a defendant's contacts with the forum." *Id.*

Under the facts in this case, we conclude that minimum contacts exist between HHM and Tennessee. HHM intentionally contacted a Tennessee corporation about manufacturing parts to be bought by HHM and entered into a contract under which Tennessee law would govern any disputes between the parties. The fact that no one from HHM physically visited the state of Tennessee is not dispositive: "[T]he absence of physical contacts will not defeat *in personam* jurisdiction where a commercial actor purposefully directs his activities toward citizens of the forum State and litigation results from injuries arising out of or relating to those activities." *Masada*, 697 S.W.2d at 334. HHM purposefully directed its activity toward a Tennessee corporation, and litigation has arisen in relationship to that activity. Under the circumstances, HHM should reasonably have anticipated that it might be haled into court in Tennessee. *See Gordon*, 300 S.W.3d at 647.

2.

HHM next asserts that the trial court erred in failing to grant its motion to dismiss under the doctrine of forum non conveniens.

Application of the doctrine of forum non conveniens is a matter within the trial court's discretion, and our review is limited to whether the trial court abused its discretion. *In re Bridgestone/Firestone*, 138 S.W.3d 202, 205 (Tenn. Ct. App. 2003). In this context, a trial court abuses its discretion if it "fails to review and balance the private and public factors that guide any consideration of the doctrine." *Id.* The private factors include the relative ease of access to proof; availability of witnesses; the possibility of viewing the premises, where appropriate; and other practical problems. *Zurick v. Inman*, 426 S.W.2d 767, 772 (Tenn. 1968). However, "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Id.* (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)). Public factors include the local interest in deciding local controversies. It is appropriate to have "the trial of a diversity case in a forum that is at home with the state laws that must govern the case . . . ." *Id.* (quoting *Gulf Oil.*, 330 U.S. at 508).

HHM submitted proof that it would need to call as many as twelve witnesses from Pennsylvania to testify at trial and that it tested the parts in Pennsylvania and found them to be defective. HHM argues that "it would have been much more efficient to litigate this dispute in Pennsylvania." In finding HHM's motion for involuntary dismissal to be without merit, the trial court emphasized that the parties entered into a contract expressly providing that Tennessee law would control. Moreover, as Precision points out, its witnesses were in Tennessee. We find no abuse of discretion in the trial court's determination not to dismiss the case based upon an inconvenient forum.

3.

HHM's final argument is that the trial court erred in denying its motion to continue the trial date.

A trial court's ruling on a motion to continue is reviewed under the abuse of discretion standard. *Barber & McMurry, Inc. v. Top-Flite Dev. Corp., Inc.*, 720 S.W.2d 469, 471 (Tenn. Ct. App.1986). There has been an abuse of discretion "when the trial court reaches a decision against logic that causes a harm to the complaining party or when the trial court applies an incorrect legal standard." *Riley v. Whybrew,* 185 S.W.3d 393, 399 (Tenn. Ct. App. 2005). We are required to uphold the trial court's ruling "as long as reasonable minds could disagree about its correctness," and "we are not permitted to substitute our judgment for that of the trial court." *Caldwell v. Hill,* 250 S .W.3d 865, 869 (Tenn. Ct. App. 2007).

The trial court's ruling on a motion for a continuance "will not be disturbed unless the record clearly shows abuse of discretion and prejudice to the party seeking a continuance." *Blake v. Plus Mark, Inc.*, 952 S.W.2d 413, 415 (Tenn. 1997). In ruling on such a motion, a trial court should consider: "(1) the length of time the proceeding has been pending, (2) the reason for the continuance, (3) the diligence of the party seeking the continuance, and (4) the prejudice to the requesting party if the continuance is not granted." *Nagarajan v. Terry,* 151 S.W.3d 166, 172 (Tenn. Ct. App. 2003).

HHM asserts that a continuance was needed to allow depositions and other discovery to be taken. In denying HHM's renewed motion to continue the trial date, the trial court noted that "it is the Defendant's own dilatory actions and its own failure to engage in timely resolution of both the jurisdictional issue and to engage in discovery that forms the need for a continuance." We find no abuse of discretion in the trial court's decision to proceed with the trial.

CONCLUSION

The decision of the trial court is affirmed. Costs of appeal are assessed against the appellant, HHM, and execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE