SHONEY'S, INC., and SHONEY'S OF    )
CANADA, INC.,                      )
                                   )
        Plaintiffs/Appellants,     )
                                   )        Davidson Chancery
                                   )        No.  95-366-III
VS.                                )
                                   )        Appeal No.
                                   )        01-A-01-9506-CH-00278
CHIC CAN ENTERPRISES, LTD., an     )
Alberta Corporation, CHIC CAN      )
ENTERPRISES, LTD., an Alberta Limited  )
Partnership, LITTLE CAESARS PIZZA OF )
ALBERTA, INC., and GEN GROUP       )
INCORPORATED,                      )
                                   )
        Defendants/Appellees.      )

> **FILED**
>
> **Dec. 8, 1995**
>
> **Cecil Crowson, Jr.**
> **Appellate Court Clerk**

IN THE COURT OF APPEALS OF TENNESSEE

MIDDLE SECTION AT NASHVILLE


APPEAL FROM THE CHANCERY COURT OF DAVIDSON COUNTY

AT NASHVILLE, TENNESSEE


HONORABLE ROBERT S. BRANDT, CHANCELLOR


Robb S. Harvey
Kathryn A. Stephenson
TUKE, YOPP & SWEENEY
Seventeenth Floor
Third National Bank Building
201 Fourth Avenue, North
Nashville, Tennessee  37219-2040
ATTORNEYS FOR PLAINTIFFS/APPELLANTS


John W. Lewis
Andrew B. Campbell
WYATT, TARRANT & COMBS
511 Union Street, Suite 1500
Nashville, Tennessee  37219
ATTORNEYS FOR DEFENDANTS/APPELLEES


AFFIRMED AND REMANDED

HENRY F. TODD
PRESIDING JUDGE, MIDDLE SECTION

CONCUR:
SAMUEL L. LEWIS, JUDGE
BEN H. CANTRELL, JUDGE

| | |
|---|---|
| SHONEY'S, INC., and SHONEY'S OF CANADA, INC., ) ) | |
| ) | |
| Plaintiffs/Appellants, ) | |
| ) | Davidson Chancery |
| ) | No. 95-366-III |
| VS. ) | |
| ) | Appeal No. |
| ) | 01-A-01-9506-CH-00278 |
| CHIC CAN ENTERPRISES, LTD., an ) | |
| Alberta Corporation, CHIC CAN ) | |
| ENTERPRISES, LTD., an Alberta Limited ) | |
| Partnership, LITTLE CAESARS PIZZA OF ) | |
| ALBERTA, INC., and GEN GROUP ) | |
| INCORPORATED, ) | |
| ) | |
| Defendants/Appellees. ) | |

O P I N I O N

The plaintiffs, Shoney's Inc., and Shoney's of Canada, Inc., have appealed from the judgment of the Trial Court dismissing their suit against the defendants, Chic Can Enterprises, Ltd., Little Caesars Pizza of Alberta, Inc., and Gen Group, Incorporated for lack of personal jurisdiction of said defendants.

The plaintiff, Shoney's, Inc. is a Tennessee corporation with principal office in Nashville.  The only interest of Shoney's, Inc., in this lawsuit is that it is a guarantor of the obligations of Shoney's of Canada, Inc., under two of three contracts between Shoney's of Canada, Inc. and the defendant, and the complaint requests a declaratory judgment as to such obligations.

The complaint states that Shoney's of Canada, Inc., is a Canadian corporation with principal place of business in Toronto, Ontario, Canada.

The complaint states that all of the defendants are domiciled in the province of Alberta, Canada.

The complaint seeks a declaratory judgment regarding and damages for breach of contracts between Shoney's of Canada, Inc., and the defendants. Said contracts are described in the complaint as:

1. "Lee's Famous Recipe Market Development Agreement," (The Marketing Agreement) executed on May 5, 1992, in Nashville, Tennessee with Shoney's Inc., as guarantor of the obligations of Shoney's of Canada, Inc.

2. "Training Agreement" executed on May 5, 1992. (Not guaranteed by Shoney's, Inc.)

3. "Lee's Famous Recipe Restaurant License Agreement" (The License Agreement) executed on June 22, 1992, with Shoney's, Inc. as guarantor of obligations of Shoney's of Canada, Inc.

4. A "Letter of Clarification" executed by Shoney's of Canada and defendants on July 2, 1992.

The Marketing Agreement states in part:

This Agreement made and entered into this 5th day of May, 1992 in Nashville, Tennessee, U.S.A. by and between Shoney's of Canada, Inc., a Canadian corporation with its principal office at Suite 6200, Scotia Plaza, 40 King Street West, Toronto, Canada M5H 3Z7 ("Licensor"), and CHIC CAN ENTERPRISES, LTD., limited partnership, with its principal office at Suite 200, 9711-45 Avenue, Edmonton, Alberta T6E 5V8 ("Developer").

. . . .

21. <u>Costs and Attorney's Fees.</u> The law regarding franchise registration, employment, covenants not to compete and other matters of local concern shall be governed by and construed in accordance with the laws of the Province of Alberta; however, as to contractual and all other matters, this Agreement and all other provisions of this instrument will be and remain subject to the application, construction, enforcement and interpretation under the laws of the State of Tennessee. To the extent, however, that the laws of the State of Tennessee differ from the Alberta Franchise Act and the regulations promulgated thereunder, such Alberta laws and regulations shall supersede and control. The Licensor hereby accepts and submits to the jurisdiction of the courts of the Province of Alberta with regard to any disputes arising under this Agreement. Nothing herein shall affect the right of Licensor to commence legal proceedings or otherwise proceed against Developer in any other jurisdiction in which personal jurisdiction over Developer may be found. . . .

. . . .

26. Guaranty of Shoney's, Inc. For value received, Shoney's Inc., located at 1727 Elm Hill Pike, Nashville, Tennessee 37210 ("Guarantor"), absolutely and unconditionally guarantees the performance by Licensor of all obligations under the Alberta Franchises Act and the regulations promulgated thereunder, and of all of the obligations of Licensor to furnish goods and services necessary to establish and open the business of the Developer, pursuant to the Licensor's Franchise Prospectus, the registration of Licensor to sell franchises in the Province of Alberta and the terms and conditions of this Agreement, . . . . Guarantor hereby accepts and submits to the jurisdiction of the courts of the Province of Alberta with regard to the enforcement of this guaranty.

. . . .

SHONEY'S OF CANADA, INC.

By: /s/ F. E. McDaniel
Title: Secretary

By: /s/ Russell L. Cooper
Title: Vice President

Date: May 4, 1992

GUARANTOR:

SHONEY'S, INC.

By: Russell L. Cooper
Title: Vice President

Date: May 4, 1992

The Training Agreement states in part:

This Training Agreement (the "Agreement") is made this 5th day of May, 1992, by and between CHIC CAN ENTERPRISES, LTD., with its address at Suite 200, 9711 - 45 Avenue, Edmonton, Alberta T6E 5V8 (the "Licensee"), and SHONEY'S OF CANADA, INC., a Canadian corporation, with its address at Suite 6200, Scotia Plaza, 40 King Street West, Toronto, Ontario M5H 3Z7 ("Shoney's of Canada").

The License Agreement states in part:

This Agreement, made and entered into this 22nd day of June, 1992 by and between Shoney's of Canada, Inc., a Canadian corporation, Suite 6200, Scotia Plaza, 40 King Street West, Toronto, Canada M5H 3Z7, hereinafter referred to as "Licensor," and CHIC CAN ENTERPRISES, LTD., hereinafter referred to as "Licensee."

-4-

. . . .

   3. Franchised Site. The rights granted to Licensee hereunder shall be nonexclusive and shall be restricted to the operation of a single Famous Recipe restaurant to be located on the real property at #307 101 Granada Blvd., Sherwood Park, Alberta T8A 4W2 . . . .

   . . . .

   31. Applicable Law. The law regarding franchise registration, employment, covenants not to compete and other matters of local concern shall be governed by and construed in accordance with the laws of the Province of Alberta; however, as to contractual and all other matters, this Agreement and all other provisions of this instrument will be and remain subject to the application, construction, enforcement and interpretation under the laws of the State of Tennessee. To differ from the Alberta Franchise Act and the regulations promulgated thereunder, such Alberta laws and regulations shall supersede and control. The Licensor hereby accepts and submits to the jurisdiction of the courts of the Province of Alberta with regard to any disputes arising under this Agreement. . . .

4. The Letter of Clarification is unremarkable except that it is written under the printed letterhead of Shoney's, Inc., 1727 Elm Hill Pike, Nashville, Tennessee, with the typed addition of "Shoney's of Canada, Inc."

Upon consideration of defendants' motion to dismiss, the Trial Court filed a memorandum containing the following:

   The plaintiff Shoney's of Canada, Inc. is a Canadian corporation with its principal place of business in Toronto. Chic Can Enterprises, Ltd., is a limited partnership with its principal place of business in Edmonton, Alberta. Shoney's of Canada and Chic Can entered into a Market Development Agreement whereby Shoney's of Canada granted Chic Can the right to open and operate Lee's Famous Recipe chicken restaurants around Edmonton, Alberta. . . .

   . . . .

   While the complaint has all three agreements attached to it and refers to all three agreements, the suit is for breach of the License Agreement. Shoney's of Canada alleges that Chic Can "defaulted under the License Agreement by failing to make payments when due" and specifies amounts owed under the License Agreement.

The License Agreement does not provide where the franchisee, Chic Can, is to make payment to Shoney's of Canada. Shoney's of Canada has the authority to inspect Chic Can's books and records that are presumably located in Canada. Paragraph 7 of the License Agreement specifies a long list of standards for the operation of the restaurant, all of which are to be performed on site in Canada. Shoney's of Canada has the right to inspect the restaurant in Canada. Chic Can is required to spend a minimum amount of money on advertising in the local area around the restaurant in Alberta. Shoney's of Canada is required to send an "opening team" to Alberta to assist in opening the Sherwood Park restaurant. Chic Can is required to keep the Canadian restaurant insured. If the franchisee defaults and the agreement is terminated, the franchisor has the right to buy the Sherwood Park, Alberta property.

The License Agreement does not have a forum selection clause. It does, however, have a consent to jurisdiction clause and a choice of law clause. Shoney's of Canada consented to the jurisdiction of the Alberta courts. . . .

In short, this is a suit by one Canadian entity against another Canadian entity arising out of a contract about a restaurant in Canada that requires performance of the contract in Canada. Moreover, because the License Agreement requires that some aspects of the parties' dispute is governed by Alberta law, Shoney's of Canada apparently intends to file a second suit in Alberta, thus requiring two trials of the same case.

. . . .

One way it seeks to give Tennessee jurisdiction is by adding Shoney's Inc., the Tennessee corporation, as a plaintiff. But, as noted, Shoney's Inc. is not a party to the License Agreement - or the other two agreements either for that matter. . . . Shoney's, Inc. is merely a guarantor of Shoney's of Canada's obligation under the agreement.

Another way Shoney's of Canada seeks to give Tennessee jurisdiction is by asserting in response to the motion to dismiss that its office is really in Tennessee. It makes this assertion notwithstanding its allegation in its complaint and the provision in the contract that its principal place of business is in Toronto, and notwithstanding that until Chic Can filed its motion to dismiss, Shoney's of Canada was not even qualified to do business in Tennessee. Shoney's of Canada qualified to do business in Tennessee one week before it filed its response to the motion to dismiss.

. . . .

As previously pointed out, according the License Agreement itself, everything that was to be done under the contract was to be done in Canada. There is nothing in the contract that requires Chic Can to do anything in Tennessee. Likewise, Shoney's of Canada is required to perform in Canada. The

consent to jurisdiction clause in the agreement subjects Shoney's of Canada to jurisdiction in Alberta's courts. Tennessee's courts are not mentioned. Likewise, Alberta law governs the construction of the agreement for the most part.

Chic Can did have some contacts with Tennessee. But, they were minimal. Chic Can's representatives visited Nashville only twice and that was to negotiate the contract. Negotiations took place in Canada, too. Chic Can mailed royalty checks to Tennessee. And it ordered material from Tennessee.

This Court cannot perceive of any interest Tennessee has in expending its judicial resources to resolve this dispute between two Canadian business entities over the operation of a restaurant in Canada. As far as convenience is concerned, this Court cannot decide the whole dispute between the parties. Indeed, Shoney's of Canada goes so far as to cite in its complaint that it is not seeking to enforce its rights under Canadian service mark and trademark laws. There will be another suit in Alberta. In the License Agreement, Shoney's of Canada is required to perform certain tasks at the site in Alberta and permitted to perform others, such as auditing and inspecting. Shoney's of Canada obtained approval from the Alberta securities regulators. Given these facts, Tennessee hardly seems a more convenient place to litigate, or partially litigate, this dispute than Alberta.

. . . .

Considering the totality of the circumstances, the Court concludes that to subject this Canadian defendant to jurisdiction in Tennessee in this suit by a Canadian plaintiff arising out of a restaurant in Canada would "offend traditional notions of fair play and substantial justice." *J.I. Case* at 532.

The defendants' counsel should submit the judgment dismissing the case. Costs are taxed to the plaintiffs.

An order was entered accordingly.

On appeal, plaintiffs present two arguments of which the first is:

Tennessee Courts have personal jurisdiction over Chic Can because of the Forum Selection Clauses in the invoices for Equipment and Supplies.

The affidavit of Dianna Booher, Director of Accounts Receivable of Shoney's, Inc.,

(the Tennessee corporation) states:

6. According to records available to me, since opening the restaurant the franchisee has made numerous purchases of

-7-

equipment and supplies from Shoney's commissary in
Nashville, Tennessee. The equipment and supplies were
shipped from Nashville to the restaurant in Edmonton, Alberta,
Canada. All such orders were invoiced in Nashville.
Payments, when made by the franchisee, were sent to Nashville
and deposited here. A sample of some of the orders placed by
the franchisee is attached as Exhibit C.

It is doubtful that the foregoing qualifies the invoices for consideration under TRE Rule 803(6).

Exhibit C to the affidavit consists of duplicate copies of two invoices indicating sales by Shoney's, Inc. to Famous Recipe Chicken, Edmonton for $5,994.50 and $53.35, both dated 7/03/92 and containing on their face the script notation:

J. Worken A/P

Nothing is cited or found in the record to indicate the identity or authority of the person who placed the notation on the invoices.

The supplemental affidavit of Garner Worken, an official of defendants, denies that he placed his name on either invoice and denies any information as to who signed the invoices. Both invoices have the following printed heading:

Eugenia Distribution Center
Shoney's, Inc.
Commissary Operations, Inc.
A Subsidiary of Shoney's, Inc.
P.O. Box 1433
Nashville, Tennessee 37202

Both of said invoices contain the printed notation,

Acknowledgement
Signing or initialing above (buyer or buyer's authorized
representative) hereby acknowledges receipt of the goods listed
above and acknowledges and agrees to all the terms and
conditions hereof, including those on the reverse side hereof.

The "reverse side hereof" is completely filled by ten "additional terms and conditions" of which numbers two and three are as follows:

2. **Governing Law.** Except as expressly inconsistent therewith, this agreement, as described in paragraph 1 above, shall be governed by and construed in accordance with the provisions of the Tennessee Uniform Commercial Code, T.C.A. §§47-1-101, et seq. Including all definitions contained therein.

3. **Remedies.** In the event of buyer's breach of any obligation hereunder, seller shall, in addition to those remedies contained in the Tennessee Uniform Commercial Code, recover all costs and expenses incurred in attempting to remedy said breach, including its reasonable attorneys fees, which buyer agrees to pay. Any action brought either by buyer or seller to enforce any remedy under this contract shall be brought in the State or Federal Courts in Davidson County, Tennessee, and buyer hereby consents to the jurisdiction of said Courts.

Even if it be shown that the above notation on the invoices was made by an employee of defendants authorized to sign for the receipt of merchandise, such showing would not establish that such employee had authority to subject his employers to the Courts of Tennessee in a country different from that in which the goods were sold and delivered.

Even if it be shown that the notation was made by an agent of defendants with such broad authority, the effect would be limited to an action for collection of the amount due upon the particular invoices upon which the notation appears.

The record does not show that either of the invoices is any part of the subject matter of this suit.

Plaintiffs cite an impressive array of authorities on forum selection but no evidence is cited or found in the record which would render such authorities applicable to the present case, i.e. evidence that a forum selection has been made by an authorized representative of defendants in regard to any part of the present controversy.

It is argued that said two invoices are included in an item of "$4,268.42 in past due trade balances," but the complaint specifically states that this amount is due Shoney's of

Canada, and not the Shoney's, Inc. which appears at the top of the invoice. The complaint contains no demand by Shoney's, Inc. for this or any other amount.

The invoices do not establish personal jurisdiction of defendants in the present case.

Plaintiffs second argument is that Tennessee Courts have personal jurisdiction of defendants because of defendants' "substantial contacts with Tennessee."

Plaintiffs' vehement criticism of the reasoning of the Trial Court is of little value to this Court which must review the decision *de novo* upon the record, although findings of fact, (but not rulings of law) of the Trial Judge are presumed correct unless the evidence preponderates otherwise. T.R.A.P. Rule 13(d), *Kelly v. Johnson,* Tenn. App. 1990, 796 S.W.2d 155.

Tennessee Courts have jurisdiction over non residents in respect to any action or claim for relief arising out of the transaction of any business within the state on "any basis not inconsistent with the constitution of this state or of the United States." T.C.A. §20-2-214.

In *Masada Investment Corp. v. Allen,* Tenn. 1985, 697 S.W.2d 332, the question on appeal was jurisdiction of a malpractice suit against a Texas lawyer who had prepared an inaccurate deed for the transfer of real estate in Memphis, Tennessee at the request of a Tennessee resident. The Supreme Court quoted T.C.A. §20-2-214 and said:

> In determining whether or not a state can assert long-arm jurisdiction, due process requires that a non-resident defendant be subjected to a judgment *in personam* only if he has minimum contacts with the forum such that "the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.;'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). However, the absence of physical contacts will not defeat *in personam* jurisdiction where a commercial actor purposefully directs his activities toward citizens of the forum State and litigation results from injuries arising out of or relating to those activities. *Burger King Corp. v. Rudzewicz,* ____ U.S. ____,

-10-

105 S.Ct. 2174, 2182, 85 L.Ed.2d 528 (1985). In such a case, "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).

. . . A three-pronged test had been developed to determine the outer limits of personal jurisdiction based on a single act: the defendant must purposefully avail himself of the privilege of acting in or causing a consequence in the forum State; the cause of action must arise from the defendant's activities there; and defendant's acts or consequences must have a substantial connection with the forum to make the exercise of jurisdiction reasonable. *Southern Machine Co. v. Mohasco Industries, Inc.,* 401 F.2d 374, 381 (6th Cir. 1968). Subsection (6) changed the long-arm statute from a "single act" statute to a "minimum contacts" statute which expanded the jurisdiction of Tennessee courts to the full limit allowed by due process. *Shelby Mutual Ins. Co. v. Moore,* 645 S.W.2d 242, 245 (Tenn.App.1981). That decision, quoting extensively from *Gullett v. Qantas Airways Ltd.,* 417 F.Supp. 490 (M.D. Tenn. 1975), noted that the *Mohasco* test was now too restrictive. The *Moore* court noted that three primary factors are to be considered in determining whether the requisite minimum contacts were present: the quantity of the contacts, their nature and quality, and the source and connection of the cause of action with those contacts. Two lesser factors to be considered are the interest of the forum State and convenience. The *Moore* court concluded:

> The phrase "fair play and substantial justice" must be viewed in terms of whether it is fair and substantially just to both parties to have the case tried in the state where the plaintiff has chosen to bring the action. In each case, the quality and nature of those activities in relation to the fair and orderly administration of the law must be weighed. As stated above in *Qantas,* this must involve some subjective value judgment by the courts.

645 S.W.2d at 246.

After applying these considerations to the facts of this case, we hold that Allen had sufficient minimum contacts with Tennessee to justify jurisdiction here. While Allen never entered Tennessee and had no direct financial interest in the sale of the UAB Building, his work was a vital component of that transaction. At his client's request, Allen prepared the legal documents controlling the transfer of ownership of the UAB Building. Allen did not merely record what Hockert instructed him to, but took independent action in fulfilling his obligations. This included conversing with WTFF's attorney in Knoxville on several occasions, drafting the documents to be in accord with Tennessee law, sending the completed documents into Tennessee for execution, and then holding these same documents until closing in his office. Allen knew that his legal work would control the sale of several million dollars of

> Tennessee realty which was being sold by a Tennessee limited partnership subject to the laws of Tennessee. These documents were to be recorded and given full legal effect in Tennessee. By wilfully and knowingly choosing to prepare legal documents which would be filed in Tennessee and be of great consequence here, Allen purposely availed himself of the privilege of doing business within this state. This litigation itself serves to highlight the importance of Allen's work product. While Allen had limited physical contact with this forum, he purposefully directed his activities toward the citizens of this state and his negligent actions resulted in injury here. Allen should have reasonably anticipated having to defend his actions in a Tennessee court. It follows that the nature and quality of Allen's contacts with Tennessee support the assertion of jurisdiction by this state, and that the litigation arose directly out of Allen's contacts with Tennessee. In addition, Tennessee has substantial interest in the outcome of this litigation and is the most convenient forum since this action involves a Tennessee defendant, WTFF, Tennessee property, and is controlled by Tennessee law.

*Masada*, 697 S.W.2d at 334-35.

Personal jurisdiction may be "general" or "specific," that is it may exist for all purposes, or it may be limited to the particular activity which gives rise to the jurisdiction. *Third National Bank in Nashville v. Wedge Group, Inc.,* 6th Cir. 1989, 882 F.2d 1087. There is no evidence of any activity of defendants in Tennessee except in connection with the subject transactions, hence jurisdiction of defendants, if such exists, must be "specific."

In *Masada,* the Texas lawyer "purposely directed his activity" toward a vital part of a transfer of Tennessee real estate at the request of a Tennessean.

Plaintiffs assert that:

> Chic Can purposefully directed its activities toward Tennessee. Knowing full well that Shoney's/Canada was operated by officers and employees of Shoney's in Nashville, that the franchising operations of Shoney's/Canada were directed out of Nashville, that reports were to be made to Shoney's/Canada in Nashville, that payments were to be made in U.S. dollars to Nashville, that purchases would be made from Nashville, that all books and records of Shoney's/Canada were maintained in Nashville, and that all corporate and franchising decisions were made in Nashville, Chic Can representatives travelled to Nashville to enter into a long-term franchising relationship with Shoney's/Canada. Chic Can

regularly made payments to Shoney's/Canada, addressed to
Nashville. Chic Can ordered supplies and equipment from
Shoney's/Canada and its affiliates in Nashville. These contacts
with Tennessee were not "tenuous" or "fortuitous."

No evidence is cited or found that, prior to the execution of the subject agreements, defendants "knew full well" that all operations of Shoney's of Canada was conducted or controlled in Tennessee. The contracts represent that the principal office of Shoney's of Canada was in Canada. There is adequate evidence that representatives of Shoney's of Canada conducted negotiations with defendants in Canada and that Shoney's of Canada had a distribution center in Alberta, Canada. It is true that one or more of the contracts was signed in Nashville, but no provision is found in any of the contracts requiring performance in Tennessee. It is true that, after the contracts were signed, defendants were notified that reports and remittances must be sent to Nashville, and that this was done. The unilateral demand, unsupported by contract obligation, and acquiescence in the demand by defendants is not "purposely directing activity" by defendants toward property or residents of Tennessee such as occurred in *Masada.*

Shoney's of Canada, Inc., insists that its principal place of business was in Nashville, Tennessee, but the evidence is uncontroverted that, as of March 22, 1995, Shoney's of Canada, Inc. was not domesticated and authorized to do business in Tennessee.

T.C.A. §45-25-102(a) provides:

> (a) A foreign corporation transacting business in this state
> without a certificate of authority may not maintain a proceeding
> in any court in this state until it obtains a certificate of
> authority.

In *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.W.2d 174, 85 L.Ed.2d 528 (1985), the franchisor was domiciled in Florida. Franchisees in Michigan dealt with a regional office of franchisor in Michigan and executed an agreement which stated that all disputes must be resolved under Florida law, but that choice of law did not require all suits to

be in Florida Courts. The Supreme Court held that the franchisees had "purposely availed themselves of the privilege of doing business in Florida" because they reached out beyond Michigan and negotiated with a Florida corporation for the benefits of a long term franchise in a nationwide organization and upheld the jurisdiction of Florida Courts over the Michigan residents. However, the Supreme Court said:

> [W]e do not mean to suggest that the jurisdictional outcome will always be the same in franchise cases. Some franchises may . . . involve different decision making structures, such that a franchisee should not reasonably anticipate out-of-state litigation. Id. at 485 n.28, 105 S.Ct. 2174, 85 L.Ed.2d at 549 n.28.
>
> . . ."'[T]he facts of each case must [always] be weighed' in determining whether personal jurisdiction would comport with 'fair play and substantial justice.'" . . .

The present case is distinguishable from *Burger King* by at least two facts: (1) defendants did not contract primarily with a Tennessee citizen or corporation, and (2) the contracts did not provide that all disputes would be resolved under Tennessee law.

In. *J.I. Case Corp. v. Williams,* Tenn. 1992, 832 S.W.2d 530, the Supreme Court upheld jurisdiction of a Memphis, Tennessee Court over an Arkansas farmer about 50 miles from Memphis under the following circumstances:

> . . . The initial contact between the parties occurred at Case's equipment exhibit at the fair in Tennessee; the instruments controlling the transaction between the parties were prepared and executed by Case in Tennessee; financing for the balance due under the agreement was furnished by a company located in Tennessee; the agreement executed by the parties contemplated that payments due under the agreement would be made in Tennessee; and parts and labor for the repair and maintenance of the equipment under the warranty agreement were to be furnished in or from Tennessee. . . .

*Case,* 832 S.W.2d at 533.

The facts of the present case are not sufficiently similar to the cited case to render its disposition determinative in the present case.

Finally, plaintiffs insist that there is no evidence that a trial in Tennessee would subject defendants to a severe disadvantage. The element of severe disadvantage is obvious from and inherent in the admitted facts. By virtue of overlapping personnel, the officials for Shoney's of Canada are also officials of Shoney's, Inc., and reside in Tennessee. All defendants are domiciled in Canada, at a great distance from Tennessee. Most if not all of the activities out of which this dispute arises occurred in Canada.

Courts of general jurisdiction in Tennessee have inherent power to apply the doctrine of *forum non conveniens* as ground for refusal to exercise jurisdiction over a cause of action arising beyond the bounds of Tennessee. The application of such doctrine is a matter of discretion of the Trial Court. When the forum chosen by plaintiff would require the defendant at great expense and inconvenience to transport himself and his witnesses a long distance, non residency is a factor to be considered. *Zwick v. Inman,* 221 Tenn. 393, 426 S.W.2d 767, (1968).

The memorandum of the Trial Judge, quoted above, indicated that his decision was based upon the doctrines of "*forum non conveniens"* (forum not convenient) and unfairness. Both are amply supported by the record. The findings of fact are supported by a preponderance of the evidence, and the conclusions of law are supported by the authorities discussed above.

The judgment of the Trial Court dismissing the plaintiffs' suit is affirmed. Costs of this appeal are taxed against the plaintiffs. The cause is remanded to the Trial Court for any necessary further proceedings.

Affirmed and Remanded.

_____
HENRY F. TODD
PRESIDING JUDGE, MIDDLE SECTION

CONCUR:

-15-

_____

SAMUEL L. LEWIS, JUDGE


_____

BEN H. CANTRELL, JUDGE