# IN THE COURT OF APPEALS OF TENNESSEE,
## AT JACKSON

_____

|  |  |  |
|---|---|---|
| **CHASE CAVETT SERVICES, INC.**, | ) | Shelby County Chancery Court |
|  | ) | No. 107615-2 |
| Plaintiff/Appellant. | ) |  |
|  | ) |  |
| VS. | ) | C.A. No. 02A01-9803-CH-00055 |
|  | ) |  |
| **BRANDON APPAREL GROUP, INC.**, | ) |  |
|  | ) |  |
| Defendant/Appellee. | ) |  |
|  | ) |  |

**FILED**

**December 7, 1998**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

_____

From the Chancery Court of Shelby County at Memphis.
**Honorable Floyd Peete, Jr., Chancellor**

**Donald E. Bourland**,
**Kenneth P. Jones**,
BOURLAND, HEFLIN, ALVAREZ & MINOR, PLC, Memphis, Tennessee
Attorneys for Plaintiff/Appellant.


**Leo Bearman, Jr.**,
BAKER, DONELSON, BEARMAN & CALDWELL, P.C., Memphis, Tennessee
Attorney for Defendant/Appellee.

OPINION FILED:

**REVERSED AND REMANDED**


**FARMER, J.**

**CRAWFORD, P.J., W.S.**: (Concurs)
**HIGHERS, J.**: (Concurs)

Plaintiff Chase Cavett Services, Inc. (Chase) appeals an order of the chancery court granting a motion to dismiss for lack of personal jurisdiction filed by Defendant Brandon Apparel Group, Inc. (Brandon). Because we find that the chancery court may exercise personal jurisdiction over Brandon, we reverse the ruling of the chancellor.

Chase is a Tennessee corporation with its principal place of business in Tennessee. Chase operates as a "factor," meaning that it purchases invoices from other businesses at a discount and subsequently attempts to collect the amounts due under those invoices. Brandon, a Delaware corporation with its principal place of business in Illinois,[1] manufactures and distributes sportswear throughout the United States using "mass merchandisers." As part of its manufacturing process, Brandon ships raw fabric to subcontractors to be sewn according to Brandon's specifications.

In November of 1994, Brandon entered into a contract with River Heights, Inc. (River Heights), a subcontractor located in Tennessee.[2] Under the contract, River Heights agreed to provide sewing services at its plant in Tennessee using raw fabric provided by Brandon and then ship the finished product back to Brandon. After River Heights performed these services, Chase purchased from River Heights certain invoices representing amounts due to River Heights under its contract with Brandon. Brandon was then notified of this purchase and began making payments to Chase at its office in Tennessee.

On June 5, 1996, Chase filed an action against Brandon in a Tennessee state court, alleging that Brandon has failed to make payments with respect to five of the outstanding invoices. On September 30, 1996, Brandon filed a motion to dismiss Chase's claim for lack of personal jurisdiction. The chancellor entered an order on February 10, 1998 granting Brandon's motion to dismiss and Chase appealed.

---

[1]Brandon's principal place of business was previously located in Wisconsin. Brandon apparently did not move its headquarters to Illinois, however, until after it entered into the agreement out of which Chase's claim arises.

[2]On the face of the contract, it appears to be an agreement between Brandon and an entity known as Walnut Grove, Inc. (Walnut Grove). From our review of the record, we are unable to determine why the contract was signed by Walnut Grove rather than River Heights. This information appears to be irrelevant for purposes of this appeal, however, as neither party disputes the existence of an agreement between Brandon and River Heights.

The sole issue on appeal is whether the chancellor erred in granting Brandon's motion to dismiss Chase's claim for lack of personal jurisdiction.[3]  When considering a motion to dismiss, the trial court will give a liberal construction to the plaintiff's complaint and will assume that the averments contained in the complaint are true.  *See Lewis v. Allen*, 698 S.W.2d 58, 59 (Tenn. 1985); *Holloway v. Putnam County*, 534 S.W.2d 292, 296 (Tenn. 1976).  The trial court is not required to make findings of fact but must only determine whether the plaintiff's complaint has alleged facts sufficient to survive the motion to dismiss.  *See S & S Screw Mach. Co. v. Cosa Corp.*, 647 F. Supp. 600, 605 (M.D. Tenn. 1986).  Because the issue presented on appeal is a question of law, our review of the chancellor's ruling is *de novo* with no presumption of correctness.  *See Lucius v. City of Memphis*, 925 S.W.2d 522, 524 (Tenn. 1996);  T.R.A.P. 13(d).

The power of a court to assert personal jurisdiction over a defendant is limited by the Due Process Clause of the Fourteenth Amendment to the United States Constitution.  *See Pennoyer v. Neff*, 95 U.S. 714, 733-34 (1877), *overruled in part on other grounds by Shaffer v. Heitner*, 433 U.S. 186, 206 (1977).  It is well established that due process is not offended by the exercise of personal jurisdiction over a defendant who is served with process while physically present in the forum state, *see, e.g., Burnham v. Superior Court*, 495 U.S. 604, 619 (1990), a defendant who is domiciled in the forum state, *see, e.g., Milliken v. Meyer*, 311 U.S. 457, 462 (1940), or a defendant who consents to being sued in the forum state.  *See, e.g., Shaffer,* 433 U.S. at 197.  Absent one of these bases of jurisdiction, however, it is also constitutionally permissible to exercise what is known as long arm jurisdiction if there are "minimum contacts" between the defendant and the forum state.  *See International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

---

[3]In support of its motion to dismiss, Brandon filed with the trial court the affidavit of Bradley A. Keywell.  Rule 12.03 of the Tennessee Rules of Civil Procedure requires as follows:

> If, on a motion [to dismiss], matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

This general rule is inapplicable, however, when the motion is one involving jurisdictional issues.  *See Nicholstone Book Bindery, Inc. v. Chelsea House Publishers*, 621 S.W.2d 560, 561 n.1 (Tenn. 1981) (finding that the trial court committed harmless error in treating the defendant's motion to dismiss for lack of personal jurisdiction as one for summary judgment).  Thus, although we recognize that the trial court in the instant case had before it matters that were outside the pleadings, we nevertheless conclude that the trial judge acted properly in treating Brandon's motion as a motion to dismiss rather than a motion for summary judgment.

In *International Shoe Co. v. Washington*, 326 U.S. 310 (1945), the Supreme Court set forth the standard for determining whether a court may exercise long arm jurisdiction over a non-resident defendant, stating that this type of jurisdiction is appropriate when the defendant has "minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Id.* at 316 (quoting *Milliken*, 311 U.S. at 463). Although the Court did not define the phrase "minimum contacts," it did indicate that, in some cases, a single contact with the forum state could support a finding of jurisdiction. *See id.* at 318. It also suggested, however, that "irregular" or "casual" contacts with the forum state are insufficient to serve as the basis of jurisdiction. *See id.* at 320. The Court stated that the focus of the "minimum contacts" inquiry should be the "quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure." *Id.* at 319. In determining that a Delaware shoe manufacturer was amenable to suit in the state of Washington, the Court offered the following rationale:

> [T]o the extent that a corporation exercises the privilege of conducting activities within a state, it enjoys the benefits and protection of the laws of that state. The exercise of that privilege may give rise to obligations; and, so far as those obligations arise out of or are connected with the activities within the state, a procedure which requires the corporation to respond to a suit brought to enforce them can, in most instances, hardly be said to be undue.

*Id.*

The proper application of the "minimum contacts" test has been further explained in a number of Supreme Court cases following *International Shoe*. In *McGee v. International Life Ins. Co.*, 355 U.S. 220 (1957), the Court upheld the exercise of long arm jurisdiction by a California court over a Texas corporation whose only contact with the state of California was that it sold a single insurance policy to a California resident. *See id.* at 223. In concluding that the "minimum contacts" standard had been satisfied, the Court stated: "It is sufficient for purposes of due process that the suit was based on a contract which had substantial connection with [the forum state]." *Id.* In *Hanson v. Denckla*, 357 U.S. 235 (1958), the Court focused on the "quality and nature" of the contacts, holding that the trial court lacked personal jurisdiction because the non-resident defendant

did not "purposefully avail[ ] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.* at 253.

In addition to asking whether the non-resident defendant has "minimum contacts" with the forum state, a court must also consider those contacts in light of other factors and determine if the assertion of personal jurisdiction comports with "traditional notions of fair play and substantial justice." *International Shoe*, 326 U.S. at 316. Such factors include (1) the burden on the defendant, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several States in furthering fundamental substantive social policies. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980). In *Asahi Metal Indus. Co., Ltd. v. Superior Court*, 480 U.S. 102 (1987), the Court considered these five factors and held that, even if the "minimum contacts" inquiry was satisfied, the assertion of personal jurisdiction by the California court over the Japanese defendant would be unreasonable. *See id.* at 114.

In Tennessee, jurisdiction over a non-resident defendant is conferred by a long arm statute which provides in pertinent part as follows:

> (a) Persons who are nonresidents of Tennessee and residents of Tennessee who are outside the state and cannot be personally served with process within the state are subject to the jurisdiction of the courts of this state as to any action or claim for relief arising from:
>
> > (1) The transaction of any business within the state;
> > . . . .
> > (5) Entering into a contract for services to be rendered or for materials to be furnished in this state;
> > (6) Any basis not inconsistent with the constitution of this state or of the United States;

Tenn. Code Ann. § 20-2-214(a) (1994). Tennessee's long arm statute was intended to reach to the full extent of due process and thus should be given a liberal construction. *See, e.g., Masada Inv. Corp. v. Allen*, 697 S.W.2d 332, 334 (Tenn. 1985).

In the instant case, Chase contends that the chancery court had personal jurisdiction

over Brandon under subsections (a)(1), (a)(5), and (a)(6) of Tennessee's long arm statute. There is also some discussion in the parties briefs regarding a newly enacted statute providing in pertinent part as follows:

> (a) A court may exercise personal jurisdiction over a person, who acts directly or indirectly, as to a claim for relief arising from the person's:
> . . .
> (2) Contracting to supply services or things in this state;

Tenn. Code Ann. § 20-2-223 (Supp. 1997)(effective July 1, 1997). We find no evidence suggesting that the legislature intended for this new statute to be applied retroactively. Thus, our holding in the instant case is in no way influenced by and does not rely upon this provision.

Under subsection (a)(1) of Tennessee's long arm statute, a Tennessee court may exercise personal jurisdiction over a non-resident defendant and entertain a claim arising from "[t]he transaction of any business within the state." Tenn. Code Ann. § 20-2-214(a)(1) (1994). Chase argues that Brandon transacted business in Tennessee within the meaning of subsection (a)(1). Specifically, Chase alleges that Brandon (1) negotiated a contract with River Heights, a Tennessee corporation, (2) entered into a contract with River Heights, a Tennessee corporation, and (3) made payments to Chase at its main office in Tennessee. Brandon, however, argues that subsection (a)(1) is inapplicable, noting that the party with whom it transacted business was River Heights rather than Chase. We see no relevance in this distinction. Brandon entered into an agreement obligating a Tennessee corporation to perform sewing services at its factory in Tennessee. Accordingly, we conclude that Brandon, as a party to this agreement, transacted business in Tennessee within the meaning of subsection (a)(1).

Chase also contends that the chancery court could have asserted personal jurisdiction over Brandon pursuant to subsection (a)(5) of Tennessee's long arm statute which subjects non-resident defendants to the jurisdiction of the Tennessee courts with respect to claims arising from "[e]ntering into a contract for services to be rendered or for materials to be furnished in this state." Tenn. Code Ann. § 20-2-214(a)(5) (1994). Chase again notes that Brandon entered into a contract whereby River Heights was obligated to provide sewing services at its plant in Tennessee and argues

that its claim arises out of Brandon's alleged breach of that contract. We again reject Brandon's argument that this subsection is inapplicable simply because the services in this case were rendered by River Heights rather than Chase. Our inquiry focuses on Brandon's contacts with the state of Tennessee. Brandon entered into a contract for sewing services to be rendered in the state of Tennessee. Chase's claim arises directly from this same agreement. We therefore conclude that Brandon entered a contract for services to be rendered in Tennessee within the meaning of subsection (a)(5).

Subsection (a)(6) of Tennessee's long arm statute provides that the assertion of long arm jurisdiction by a Tennessee court is permissible when there is "[a]ny basis [for jurisdiction] not inconsistent with the constitution of this state or of the United States." Tenn. Code Ann. § 20-2-214(a)(6) (1994). In determining whether the chancery court could have exercised jurisdiction over Brandon pursuant to this provision, we must apply the "minimum contacts" test of *International Shoe*.

In *Nicholstone Book Bindery, Inc. v. Chelsea House Publishers*, 621 S.W.2d 560 (Tenn. 1981), our supreme court applied the "minimum contacts" test to facts very similar to those of the case at bar. *Nicholstone* involved a contract whereby Nicholstone, a Tennessee corporation, agreed to perform printing and binding services at its office in Tennessee and then ship the finished product to Chelsea, a New York publisher. *See id.* at 561. In an action brought by Nicholstone against Chelsea for non-payment under the contract, the issue became whether the Tennessee court had personal jurisdiction over Chelsea under Tennessee's long arm statute. *See id.* The *Nicholstone* court adopted the three part analysis of *Southern Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374 (6th Cir. 1968), which attempted to synthesize the rule of *International Shoe* and its progeny. *See id.* at 562. The court stated the test as follows:

> First, the defendant must purposefully avail himself of the privileges of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Id.* (quoting *Mohasco*, 401 F.2d at 381). Applying these factors, the court found that Chelsea's contacts with the state of Tennessee were sufficient to subject Chelsea to the jurisdiction of the Tennessee courts. *See id.* at 566.

In *Masada Inv. Corp. v. Allen*, 697 S.W.2d 332 (Tenn. 1985), our supreme court considered whether Allen, a Texas attorney, had sufficient contacts with the state of Tennessee to confer jurisdiction under subsection (a)(6) of Tennessee's long arm statute. *Id.* at 333. Allen's contacts with Tennessee consisted of the following: (1) He prepared a sales contract and a warranty deed in connection with a pending purchase of real property located in Tennessee; (2) He sent the aforementioned sales contract and warranty deed to Tennessee for execution; and (3) He participated in the closing on the property, which took place at his office in Texas. *See id.* In determining whether Allen had "minimum contacts" with the state of Tennessee, the court adopted the five factor analysis of *Shelby Mut. Ins. Co. v. Moore*, 645 S.W.2d 242 (Tenn. App. 1981). The court thus considered (1) the quantity of the contacts, (2) their nature and quality, (3) the source and connection of the cause of action with those contacts, (4) the interest of the forum state, and (5) convenience. *See Masada*, 697 S.W.2d at 334. Applying these considerations, the court found that Allen's contacts with the state of Tennessee were sufficient to satisfy the "minimum contacts" test of *International Shoe*. *See id.* at 335.

The analysis developed in *Masada* was slightly altered by *Shoney's, Inc. v. Chic Can Enters., Ltd.*, 922 S.W.2d 530 (Tenn. App. 1995). In *Shoney's*, the court noted that the reach of Tennessee's long arm statute had been extended with the addition of subsection (a)(6). *See id.* at 536. The court concluded that, given this expansion, the *Mohasco* test is now too restrictive. *See id.* The court then announced that the proper application of the "minimum contacts" test involved consideration of three primary factors, namely (1) the quantity of the contacts, (2) the nature and quality of the contacts, and (3) the source of the contacts and their connection with the cause of action. *See id.* The court also listed as lesser factors the interest of the forum state and convenience. *See id.*

Brandon's contacts with the state of Tennessee that relate to Chase's claim for relief include the following: (1) Brandon entered into an agreement with River Heights, a Tennessee

corporation, for sewing services to be rendered in Tennessee; (2) Brandon shipped raw materials to River Heights at its plant in Tennessee; and (3) Brandon mailed payments to Chase at its office in Tennessee. These contacts are strikingly similar to the contacts between the state of Tennessee and the non-resident defendant in *Nicholstone*. Like the *Nicholstone* court, we find that the defendant in the instant case has purposefully availed itself to the privilege of acting and causing consequences in Tennessee. The fact that River Heights allegedly initiated the transaction between River Heights and Brandon in no way negates the purposefulness of Brandon's actions. *See Nicholstone*, 621 S.W.2d at 563 (citing *Mohasco*, 401 F.2d at 382). We further find that Chase's claim for relief arises directly out of its contacts with Tennessee.

We next consider whether the contacts between Brandon and the state of Tennessee are substantial enough to make the exercise of jurisdiction reasonable. A brochure prepared by Brandon indicates that Brandon has a manufacturing facility in Tennessee, that 1.25% of Brandon's sales are generated in Tennessee, and that Brandon is licensed to sell apparel bearing the logos of the University of Tennessee, the University of Memphis, and Vanderbilt University. By virtue of the representations contained in this brochure, Brandon has held itself out as a corporation that does business in Tennessee. A company that does business in the state of Tennessee should certainly anticipate being haled into a Tennessee court when it fails to pay for services rendered in Tennessee. *See id.* at 564. We therefore find that, under these circumstances, the assertion of personal jurisdiction over Brandon by a Tennessee court is reasonable.

Consideration of the factors discussed in *Masada* and *Shoney's* also leads us to the conclusion that the chancery court could have exercised personal jurisdiction over Brandon. Brandon's contacts with the state of Tennessee were limited to its business dealings with River Heights and at least one other subcontractor, the sale of its products to "mass merchandisers" doing business in Tennessee, and its voluntary payments to Chase. The "nature and quality" of these contacts, however, appear to be fairly substantial as services valued at thousands of dollars were performed by the Tennessee subcontractors. Brandon's contacts with Tennessee are directly related to Chase's cause of action. Additionally, we note that the state of Tennessee has a strong interest in providing a forum for its residents, although Brandon may experience some inconvenience if required to defend an action in Tennessee. After considering all of these factors, we conclude that

the "minimum contacts" test has been satisfied. Thus, we hold that Brandon is subject to the long arm jurisdiction of the Tennessee courts.

Brandon contends that the rationale of *Nicholstone* must be read in light of the more conservative approach taken by the Supreme Court in *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984). In *Helicopteros*, the Court considered whether a Texas court could assert long arm jurisdiction over a non-resident corporation that (1) sent its chief executive officer to Texas to negotiate a contract, (2) accepted checks drawn on a Texas bank, (3) purchased helicopters and equipment from a Texas manufacturer, (4) sent its pilots to be trained in Texas, and (5) sent members of its management and maintenance personnel to visit the plaintiff's plant in Texas. *See id.* at 411. The Court found that these contacts were not "continuous and systematic" and thus concluded that the Texas court lacked personal jurisdiction over the non-resident defendant. *See id.* at 416.

Brandon argues that, because its contacts with the state of Tennessee are even less substantial than the contacts of the defendant in *Helicopteros*, it is not subject to the jurisdiction of the Tennessee courts. We find that the rationale of *Helicopteros* is inapplicable to the case at bar. In *Helicopteros*, the plaintiff's cause of action arose out of a helicopter accident that occurred in Peru. *See id.* at 409. The parties stipulated that the plaintiff's claim was unrelated to the defendant's contacts with the forum state. *See id.* at 415. The question, then, was whether the Texas court could assert *general* jurisdiction[4] over the non-resident defendant. In the instant case, however, Chase's cause of action arises directly from the contract between Brandon and River Heights. Thus, the question here is one of *specific* jurisdiction. The "minimum contacts" test with respect to the exercise of *specific* jurisdiction does not require the defendant's contacts with the forum state to be "continuous and systematic." *See J. I. Case Corp. v. Williams*, 832 S.W.2d 530, 532 (Tenn. 1992)

---

[4]There are two types of personal jurisdiction, general and specific. *See Shoney's*, 922 S.W.2d at 537. General jurisdiction refers to actions that are not related to the defendant's contacts with the forum state while specific jurisdiction refers to actions that arise out of or relate to these contacts. *See id.* The Supreme Court cases following *International Shoe* have applied the "minimum contacts" test in a more conservative manner when the issue was one of general jurisdiction. Unlike the cases involving questions of specific jurisdiction, these cases hold that a court cannot exercise general jurisdiction over a non-resident defendant unless the defendant's contacts with the forum state are "continuous and systematic." *See Helicopteros*, 466 U.S. at 415-16 (citing *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 438, 445 (1952)).

(noting that, even when there is no general jurisdiction because the defendant did not maintain continuous and systematic contacts with the state of Tennessee, the defendant may still be subject to the specific jurisdiction of the Tennessee courts with respect to claims arising out of or relating to the defendant's contacts with Tennessee). Thus, the rationale of *Helicopteros* cannot be applied in the instant case and does not affect the soundness of our supreme court's holding in *Nicholstone*.

### *Conclusion*

Based on the foregoing, we find that Brandon is subject to the jurisdiction of the Tennessee courts under subsections (a)(1), (a)(5), and (a)(6) of Tennessee's long arm statute. Thus, the chancellor erred in granting Brandon's motion to dismiss Chase's claim for lack of personal jurisdiction. We therefore reverse the ruling of the chancery court and remand for further proceedings consistent with this opinion. Costs on appeal are charged to Brandon, for which execution may issue if necessary.

_____
FARMER, J.

_____
CRAWFORD, P.J., W.S. (Concurs)

_____
HIGHERS, J. (Concurs)