IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 8, 2010 Session

FRANKLIN AMERICAN MORTGAGE
v.
DREAM HOUSE MORTGAGE CORPORATION
OF RHODE ISLAND, ET AL.
v.
FIREMAN & ASSOCIATES, LLP, ET AL.

Direct Appeal from the Circuit Court for Williamson County
No. 2008-08552    Robbie T. Beal, Judge

No. M2009-01956-COA-R9-CV - Filed October 5, 2010

This appeal involves in personam jurisdiction over an out-of-state defendant. Plaintiff, a Tennessee mortgage company, filed suit against the Appellee herein, a Rhode Island mortgage company, after Plaintiff allegedly suffered injury from a breach of contract on the part of Appellee, stemming from Plaintiff's purchase of a loan from Appellee in the secondary mortgage market. In the posture of plaintiff, Appellee filed a third-party complaint against the Massachusetts lawyer and firm, the Appellants herein, who had underwritten the loan that Appellee ultimately sold to the Tennessee Plaintiff. The lawyer and firm filed a motion in the Tennessee court to dismiss the third-party complaint for lack of personal jurisdiction. The trial court found that Tennessee had personal jurisdiction over the third-party defendant law firm and lawyer, and denied their motion to dismiss. The lawyer and firm appeal. Finding that there are not sufficient contacts with Tennessee, we reverse the trial court's finding of personal jurisdiction, and remand for further proceedings.

Tenn. R. App. P. 9. Interlocutory Appeal; Judgment of the Circuit Court Reversed

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and DAVID R. FARMER, J., joined.

Barry L. Howard, Nathaniel K. Cherry, Nashville, Tennessee, for the appellants, Fireman & Associates, LLP and Robert N. Fireman, Individually and d/b/a Fireman & Associates, LLP.

Dream House Mortgage Corporation of Rhode Island, Pro Se.

## OPINION

Franklin American Mortgage Company ("FAM") is a Tennessee corporation, with its principal place of business in Franklin, Tennessee. Dream House Mortgage Corporation ("Dream House," or "Appellee") is a Rhode Island corporation, with its principal place of business in Warwick, Rhode Island. Dream House is engaged in the business of mortgage lending. In January, 2008, FAM and Dream House entered into a Correspondent Loan Purchase Agreement ("Purchase Agreement"). This Purchase Agreement provided for the sale of residential mortgage loans by Dream House (as the "Seller") to FAM (as the "Buyer"). Pursuant to the Purchase Agreement, Dream House originated a mortgage loan to John Castodio of Dorchester, Massachusetts (the "Castodio Loan"). After purchasing the Castodio Loan from Dream House, FAM discovered significant underwriting discrepancies, including alleged misrepresentations of material information and errors and omissions in the loan documentation that allegedly rendered the Castodio Loan ineligible for purchase by FAM. Consequently, FAM demanded that Dream House repurchase the Castodio Loan from FAM, pursuant to the terms of the Purchase Agreement. When Dream House refused FAM's request, FAM filed a Complaint for breach of contract against Dream House, on September 9, 2008, in the Circuit Court at Williamson County, Tennessee.

On March 10, 2009, Dream House filed its Answer, admitting that it had certain contractual obligations to FAM under the Purchase Agreement. Concurrent with its Answer, Dream House filed a third-party complaint against Fireman & Associates, LLP, and Robert N. Fireman, individually and d/b/a Fireman & Associates, LLP, (together, "Fireman," or "Appellants"), and First American Title Insurance Company ("First American").[1] Fireman is a limited liability partnership located in Needham, Massachusetts and Mr. Fireman is an attorney licensed in the state of Massachusetts. According to Dream House's third-party complaint, the Castodio Loan at issue was applied for by John Castodio, Jr., who fraudulently submitted documentation for the loan application using his father, John Castodio, Sr.'s, social security number. Dream House further averred that Rebecca Konsevic, a Fireman employee, was aware of Mr. Castodio's scheme and, in fact, acted in concert with him, thereby making Fireman liable under the doctrine of *respondeat superior*. According to the third-party complaint, First American issued a closing protection letter regarding the Castodio Loan, wherein First American allegedly represented that it would reimburse Dream House for actual loss incurred in connection with this closing. The third-party complaint further alleges that all of the parties were aware that Dream House was selling the Castodio Loan to FAM.

---

[1] According to the record, First American is licensed to do business in the State of Tennessee, through the Tennessee Commissioner of Insurance, and is registered with the Tennessee Secretary of State. Consequently, the issue of personal jurisdiction applies only to third-party defendants Fireman.

On May 11, 2009, Fireman filed, by special appearance, a motion to dismiss Dream House's third-party complaint. Specifically, Fireman averred that the Circuit Court at Williamson County, Tennessee lacked personal jurisdiction over Fireman, and asserted that Dream House's third-party complaint should be dismissed pursuant to Tenn. R. Civ. P. 12.02(2). Fireman's motion was supported by the Affidavit of Mr. Fireman. On June 23, 2009, Dream House filed a response to Fireman's motion to dismiss, along with the Affidavit of John Ponte, the president of Dream House.[2] The motion to dismiss was heard by the trial court on July 29, 2009 at which time the trial court found that it had jurisdiction over Fireman, and dismissed Fireman's motion. Specifically, the court reasoned that:

> In considering the quantity of the contacts between [Fireman] and the forum State [i.e., Tennessee] and the nature and quality of those contacts, the Court recognizes [that Fireman] had no direct contact with the forum State. In considering the relationship between [Fireman] and the forum State, the Court finds [that Fireman] did know [] or should have known that [Fireman's] work product would be placed into the stream of commerce outside the State of Massachusetts since any closing attorney in today's environment knows mortgages are apt to be sold, that it is a normal course of business, and, therefore, any negligent act that they may have [committed] may affect business interest in other States.

On August 3, 2009, Fireman filed a motion for interlocutory appeal, pursuant to Tenn. R. App. P. 9. By Order of September 14, 2009, the trial court granted Fireman's motion for interlocutory appeal. On October 14, 2009, this Court granted Fireman's application for permission to appeal. The sole issue for review is:

> Whether the trial court erred in ruling that the Appellants/Third-Party Defendants Fireman & Associates, LLP, and Robert N.

---

[2] Tenn. R. Civ. P. 12.03 provides that: "[i]f, on a motion [to dismiss], matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." However, the Tennessee Supreme Court has previously held, that this general rule is inapplicable when the motion is one involving jurisdictional issues. *See Nicholstone Book Bindery, Inc. v. Chelsea House Publishers*, 621 S.W.2d 560, 561 n. 1 (Tenn.1981)(finding that the trial court committed harmless error in treating the defendant's motion to dismiss for lack of personal jurisdiction as one for summary judgment). Although neither party raises this as an issue, under the *Nicholstone* holding, the trial court correctly treated this as a motion to dismiss.

Fireman, individually and d/b/a Fireman and Associates, LLP, are subject to personal jurisdiction in the State of Tennessee.

A decision regarding the exercise of personal jurisdiction over a defendant involves a question of law. Accordingly, the appellate courts will review a trial court's decision to grant or deny a Tenn. R. Civ. P. 12.02(2) motion *de novo,* with no presumption of correctness, for the purpose of determining whether the plaintiff has made out a *prima facie* case for the exercise of personal jurisdiction over the defendant. *Woodruff v. Anastasia Int'l, Inc.*, No. E2007-00874-COA-R3CV, 2007 WL 4439677, at \*3 (Tenn. Ct. App. Dec. 19, 2007), perm. app. withdrawn (Apr. 7, 2008); *In re Clark*, No. W2005-01687-COA-R3-JV, 2007 WL 152537, at \*10 (Tenn. Ct. App. Jan. 22, 2007) (No Tenn. R. App. P. 11 application filed). In the instant case, Dream House bears the ultimate burden of demonstrating that the trial court may properly exercise personal jurisdiction over Fireman. *Chenault v. Walker*, 36 S.W.3d 45, 56 (Tenn. 2001); *Davis Kidd Booksellers, Inc. v. Day-Impex, Ltd.*, 823 S.W.2d 572, 577 (Tenn. Ct. App. 1992). However, this burden is ordinarily not a heavy one, because personal jurisdiction need only be demonstrated by a preponderance of the evidence. *Gordon v. Greenview Hosp., Inc.*, 300 S.W.3d 635, 644 (Tenn., 2009).

The United States Supreme Court has held that due process requires that personal jurisdiction over a nonresident defendant can only be exercised if that defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). This is a two-part test, which requires evaluating whether the requisite minimum contacts are present and whether the exercise of jurisdiction is fair. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985); *Davis Kidd Booksellers*, 832 S.W.2d at 575.

The outer limits of the ability of Tennessee's courts to exercise jurisdiction over nonresident defendants are defined by statute. These "long-arm statutes" are found at Tenn. Code Ann. §20-2-223(a),[3] Tenn. Code Ann. §20-2-214(a)(6),[4] and Tenn. Code Ann. §20-2-

---

[3] Tenn. Code Ann. § 20-2-223. **Personal jurisdiction based on conduct**.

> (a) A court may exercise personal jurisdiction over a person, who acts directly or indirectly, as to a claim for relief arising from the person's:
> (1) Transacting any business in this state;
> (2) Contracting to supply services or things in this state;
> (3) Causing tortious injury by an act or omission in this state;
> (4) Causing tortious injury in this state by an act or omission outside this

(continued...)

state of the person who regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this state;

(5) Having an interest in, using or possessing real property in this state;

(6) Contracting to insure any person, property or risk located within this state at the time of contracting; or

(7) Conduct as a director or officer of a domestic corporation or the conduct of a domestic corporation while the person held office as a director or officer.

(b) When jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against that person.

[4] Tenn. Code Ann. § 20-2-214. **Personal service; unavailability; jurisdiction**

(a) Persons who are nonresidents of this state and residents of this state who are outside the state and cannot be personally served with process within this state are subject to the jurisdiction of the courts of this state as to any action or claim for relief arising from:

(1) The transaction of any business within this state;

(2) Any tortious act or omission within this state;

(3) The ownership or possession of any interest in property located within this state;

(4) Entering into any contract of insurance, indemnity or guaranty covering any person, property or risk located within this state at the time of contracting;

(5) Entering into a contract for services to be rendered or for materials to be furnished in this state;

(6) Any basis not inconsistent with the constitution of this state or of the United States;

(7) Any action of divorce, annulment or separate maintenance where the parties lived in the marital relationship within this state, notwithstanding one party's subsequent departure from this state, as to all obligations arising for alimony, custody, child support or marital dissolution agreement, if the other party to the marital relationship continues to reside in this state.

(b) As used in this section, "person" includes corporations and all other entities that would be subject to service of process if present in this state.

(c) Any such person shall be deemed to have submitted to the jurisdiction of this state who acts in the manner described in subsection (a) through an agent or personal representative.

(continued...)

225.[5]

As noted by our Supreme Court in *Gordon v. Greenview Hospital*:

> In 1972, the Tennessee General Assembly amended Tennessee's long-arm statute to provide that "[p]ersons who are nonresidents of this state ... are subject to the jurisdiction of the courts of this state as to any action or claim for relief arising from ... [a]ny basis not inconsistent with the constitution of this state or of the United States." Tenn. Code Ann. § 20-2-214(a) (2009).

> The intent of the 1972 amendment was to lengthen the reach of the long-arm statute to the farthest extent permitted by due process. Accordingly, Tennessee's courts later observed that the addition of Tenn. Code Ann. § 20-2-214(a)(6) converted the long-arm statute from a "single enumerated act" statute to a "minimum contacts" statute that permitted Tennessee courts to exercise personal jurisdiction over nonresident defendants to the full limit permitted by due process. *Masada Inv. Corp. v. Allen*, 697 S.W.2d at 334; *Shelby Mut. Ins. Co. v. Moore*, 645 S.W.2d 242, 245-46 (Tenn. Ct. App.1981).

*Gordon v. Greenview Hosp.*, 300 S.W.3d at 645 (footnote omitted).

Federal and state courts now recognize two varieties of personal jurisdiction–specific jurisdiction and general jurisdiction. The United States Supreme Court first distinguished between specific and general jurisdiction in *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984). Tennessee adopted the distinction between specific and general jurisdiction in the 1992 case, *J.I. Case Corp. v. Williams*, 832 S.W.2d 530, 532 (Tenn.

---

[4](...continued)

[5]    Tenn. Code Ann. § 20-2-225. **Other bases of jurisdiction unaffected; jurisdiction whenever permitted by constitution.**

A court of this state may exercise jurisdiction:

(1) On any other basis authorized by law; or
(2) On any basis not inconsistent with the constitution of this state or of the United States.

1992), *rev'd on other grounds*, 300 S.W.3d 635 (Tenn. 2009). In **Gordon v. Greenview Hospital**, our Supreme Court explained the distinction between specific and general jurisdiction:

> Specific jurisdiction may be asserted when the plaintiff's cause of action arises from, or is related to, the nonresident defendant's activities in or contacts with the forum state. To invoke specific jurisdiction, a plaintiff must show (1) that the nonresident defendant has purposely established significant contact with the forum state and (2) that the plaintiff's cause of action arises out of or is related to these activities or contacts. **Burger King Corp. v. Rudzewicz**, 471 U.S. at 472, 105 S.Ct. 2174. The nonresident defendant's contacts with the forum state must be sufficient to enable a court to conclude that the defendant "should reasonably anticipate being haled into court [in the forum state]." **Lindsey v. Trinity Commc'ns, Inc.**, 275 S.W.3d 411, 418 (Tenn. 2009) (quoting **World-Wide Volkswagen**, 444 U.S. at 297, 100 S.Ct. 559). If the plaintiff can make that showing, the defendant will have the burden of showing that the exercise of specific jurisdiction would be unfair. **Burger King Corp. v. Rudzewicz**, 471 U.S. at 477, 105 S.Ct. 2174; 16 **Moore's Federal Practice** §§ 108.42[1], at 108-54, 108.42[6], at 108-77.
>
> In contrast to specific jurisdiction, general jurisdiction may be asserted when the plaintiff's cause of action does not arise out of and is not related to the nonresident defendant's activities in the forum state. The threshold for satisfying the requirements for general jurisdiction is substantially higher than the requirements for establishing specific jurisdiction. 4 Charles Alan Wright & Arthur R. Miller *Federal Practice and Procedure* § 1067.5, at 517. An assertion of general jurisdiction must be predicated on substantial forum-related activity on the part of the defendant. The nonresident defendant's contacts with the forum state must be sufficiently continuous and systematic to justify asserting jurisdiction over the defendant based on activities that did not occur in the forum state. **Helicopteros Nacionales de Colombia, S.A. v. Hall**, 466 U.S. at 416, 104 S.Ct. 1868; **Perkins v. Benguet Consol. Mining Co.**, 342 U.S. at 448, 72 S.Ct. 413, **Lindsey v. Trinity Commc'ns, Inc.**, 275

S.W.3d at 417; *see also* 4 *Federal Practice and Procedure* § 1067.5, at 507.

The general jurisdiction inquiry is very different from the specific jurisdiction inquiry. The United States Court of Appeals for the Fifth Circuit has pointed out that "[u]nlike the specific jurisdiction analysis, which focuses on the cause of action, the defendant and the forum, a general jurisdiction inquiry is dispute blind, the sole focus being on whether there are continuous and systematic contact between the defendant and the forum." ***Dickson Marine, Inc. V. Panalpina, Inc.,*** **179 F.3d 331,339 (5th Cir. 1999).** In order to warrant the exercise of general jurisdiction over a nonresident defendant, "the defendant must be engaged in longstanding business in the forum state, such as marketing or shipping products, or performing services or maintaining one or more offices there; activities that are less extensive than that will not qualify for general in personam jurisdiction." 4 *Federal Practice and Procedure* § 1067.5, at 507.

The proper analysis for determining whether a defendant's contacts are "continuous and systematic" enough to warrant an assertion of general jurisdiction requires ascertaining whether "the continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." ***Lindsey v. Trinity Commc'nc, Inc.,*** **275. S.W. 3d at 417** (quoting ***Int'l Shoe Co. v. Washington,*** **326 U.S. at 318, 66 S. Ct. 154).**

Questions involving whether a nonresident's contacts with the forum state are sufficient to warrant the exercise of general jurisdiction are extremely fact dependent. 4A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1069.4, at 164, 185 (3d ed. 2002) . . . . Determining whether it is appropriate to exercise jurisdiction entails a careful, non-mechanical evaluation of the facts with particular focus on the nonresident defendant's contacts with the forum state. ***Int'l Shoe Co. v. Washington,*** **326 U.S. at 319, 66 S.Ct. 154.**

Lest the distinction between the basis for specific jurisdiction and general jurisdiction be overlooked, we emphasize that the assertion of specific jurisdiction is appropriate only when the plaintiff's cause of action arises from or is related to the defendant's contacts with the forum state. However, general jurisdiction is appropriate when the plaintiff's cause of action does not arise from and is not related to the defendant's contacts with the forum state. Thus, when a plaintiff's cause of action is based on the defendant's activities in or contacts with the forum state, specific jurisdiction, as opposed to general jurisdiction, applies. Therefore, consistent with the due process requirements of the federal and state constitutions, when a nonresident defendant's contacts with a forum state are substantial, systematic, and continuous, and the exercise of general jurisdiction satisfies the fairness requirement, the cause of action need not arise out of or relate to those contacts.

*Gordon v. Greenview Hosp.*, 300 S.W.3d at 647-49 (footnotes omitted).

In the instant case, it is undisputed that neither Mr. Fireman, nor his law firm, had direct contact with Tennessee–Mr. Fireman is not licensed to practice law here, nor has he ever been admitted *pro hoc vice*. Fireman is a Massachusetts firm; Dream House is a Rhode Island business, and the property at issue is located in Massachusetts. Because Fireman has no "sufficiently continuous and systematic" contacts with Tennessee, any finding of personal jurisdiction in this case must be predicated upon specific, as opposed to general, jurisdiction. That being said, the question is whether Fireman's actions in preparing and facilitating the Castodio Loan in the state of Massachusetts can provide the basis for personal jurisdiction in Tennessee. More specifically, the gravamen is whether Fireman's contacts with Tennessee are sufficient to enable our courts to conclude that Fireman "should reasonably anticipate being haled into court [in the forum state–here, Tennessee]." *Lindsey v. Trinity Commc'ns, Inc.*, 275 S.W.3d at 418.

In *Masada Inv. Corp. v. Allen*, 697 S.W.2d 332 (Tenn. 1985), our Supreme Court discussed the requisite factors, which determine the existence or absence of minimum contacts, stating:

[T]hree primary factors are to be considered in determining whether the requisite minimum contacts were present: the quantity of the contacts, their nature and quality, and the source and connection of the cause of action with those contacts. Two

> lesser factors to be considered are the interest of the forum State and convenience.

*Masada*, 697 S.W.2d at 334 (relying upon *Shelby Mut. Ins. Co. v. Moore*, 645 S.W.2d 242, 246 (Tenn. Ct. App. 1981)). Under Tennessee's "minimum contacts" test, the cause of action need not arise in this State. *Masada*, 697 S.W.2d at 332; *see also Walker v. Nationwide Ins. Co.*, 813 S.W.2d 135, 138 (Tenn. Ct. App. 1990). Moreover, all five factors set out in *Masada* need not be present in order for courts of this State to exercise personal jurisdiction. *Walker*, 813 S.W.2d at 138. Furthermore, the defendant's contacts with the forum state need not be physical, and the court will primarily examine the quantity of the contacts, their nature and quality, and the relationship between the contacts and the cause of action. *Masada Inv. Corp. v. Allen*, 697 S.W.2d at 334. As part of its evaluation of the reasonableness of exercising jurisdiction, the court "must consider the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief. It must also weigh in its determination 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies[,] and the shared interest of the several States in furthering fundamental substantive social policies.'" *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113 (1987) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)).

In the instant case, Dream House contends that Fireman's alleged negligence in failing to properly identify Mr. Castodio, Jr. at the closing was both the cause in fact, and the legal cause, of any damage allegedly suffered in Tennessee by FAM. Fireman contends that it had no direct contact with Tennessee, that it did not produce anything that would trigger a stream of commerce analysis, that Tennessee has no significant interest in adjudicating this dispute, and that Tennessee is not a convenient forum.

As discussed above, the fact that Fireman had no direct contact with Tennessee is not dispositive to the question of personal jurisdiction. It is well settled that, where a defendant commits a tortious act outside the State of Tennessee, which act proximately causes damages to be sustained within the State, the tort is deemed to have occurred within the State, and the Tennessee long-arm statutes are applicable. *See Overton v. Raffone*, No. 03A01-9305-CV-00192, 1994 WL 27618, *3 (Tenn. Ct. App. Feb. 3, 1994); *McCombs v. Cerco Rentals*, 633 S.W.2d 822, 825 (Tenn. Ct. App. 1981); *Jasper Aviation v. McCollum Aviation, Inc.*, 497 S.W.2d 240 (Tenn. 1972). In short, even though the tortious act may have occurred outside the State of Tennessee, if the resulting tortious injury is sustained within the State, then the tortious act and the injuries flowing therefrom are inseparable and jurisdiction lies in Tennessee. *McCombs*, 622 S.W.2d at 822; *Jasper Aviation*, 497 S.W.2d 240. However, merely placing something into the stream of commerce is not sufficient to establish personal jurisdiction. *Asahi*, 480 US 102 at 112.

In ***Mullins v. Harley-Davidson Yamaha BMW of Memphis, Inc.***, 924 S.W.2d 907 (Tenn. Ct. App. 1996), the plaintiff's decedent was injured in a motorcycle accident. His death was attributed to a defective helmet. The Korean manufacturer of the helmet was named as a defendant. We held that Tennessee's exercise of personal jurisdiction over that defendant would not comport with due process because the manufacturer established that it maintained no office or place of business in the United States, and sold helmets to distributors, who were "free to sell to any dealer of their choosing in the United States." *Id*. at 909. Furthermore, the manufacturer did not sell directly to dealers, did not sell motorcycle helmets or any other products directly into Tennessee, and did not create or control the distribution system that brought the helmets into the state. *Id*. Additionally, the manufacturer neither advertised in Tennessee, nor solicited business in Tennessee. *Id*.

In reaching its decision, the ***Mullins*** court principally relied upon two decisions, ***Asahi Metal Industries Company v. Superior Court***, 480 U.S. 102 (1987), and ***Davis Kidd Booksellers, Inc. v. Day-Impex, Ltd.***, 832 S.W.2d 572 (Tenn. Ct. App. 1992). These cases establish that simply placing a manufactured item into the "stream of commerce" does not suffice to establish personal jurisdiction. As the Supreme Court stated: "[t]he placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State." *Asahi*, 480 U.S. at 112. The ***Mullins*** Court, and the ***Davis Kidd*** court before it, concluded that *Asahi* did not represent an exception to the traditional "minimum contacts" analysis, and held that the exercise of personal jurisdiction in those cases would violate due process.

The holding in ***Mullins*** is consistent with long recognized constitutional due process jurisprudence. In ***World-Wide Volkswagen v. Woodson***, 444 U.S. 286 (1980), the Supreme Court rejected the notion that a seller of goods was subject to personal jurisdiction simply because it was foreseeable that the seller's goods could be transported to a forum state. As the Court noted, if that were so, "[e]very seller of chattels would in effect appoint the chattel his agent for service of process."

This "stream of commerce" analysis is succinctly explained in 18 Fletcher's Cyclopedia on the Law of Private Corporations § 8640.40:

> Although it has been argued that foreseeability of causing injury in another state should be sufficient to establish minimum contacts when policy considerations so require, the mere foreseeability of injury in a foreign jurisdiction is not a sufficient benchmark for exercising personal jurisdiction. [***Burger King Corp. v. Rudzewicz***, 471 US 462, 85 L Ed 2d 528, 105 S Ct 2174; ***World-Wide Volkswagen Corp. v. Woodson***,

444 US 286, 62 L Ed 2d 490, 100 S Ct 559; *Yates v. Turzin*, 786 F Supp 594 (SD Miss 1991) (applying Mississippi law)]. The foreseeability that is critical to the due process analysis is that the defendant's conduct in connection with the forum state are such that it should reasonably anticipate being haled into court there. [*Burger King*, 471 US 462; *World-Wide Volkswagen*, 444 US 286]. Jurisdiction cannot be imposed on a foreign corporate defendant that has no contacts with the forum state merely by reason of the fortuitous appearance of one of the defendant's products [in the forum state]. [*World-Wide Volkswagen*, 444 US 286].

The "substantial connection" between the defendant and the forum state necessary for a finding of minimum contacts must come about by an action of the defendant purposefully directed toward the forum state. [*Asahi*, 480 US 102]. However, the placement of a product into the stream of commerce without more is not an act of a defendant that is purposefully directed toward the forum state.[*Id.*] In other words, the appropriate test is not knowledge or awareness of the ultimate destination of the product, but whether the manufacturer has purposely engaged in forum activities so it can reasonably expect to be haled into court there; and even if this is so, the minimum requirements of fair play and substantial justice may yet defeat jurisdiction.[*Falkirk Min. Co. v. Japan Steel Works, Ltd.*, 906 F.2d 369 (CA8 1990) (merely bringing parts sold to American corporation by Japanese manufacturer and its American subsidiary into forum state insufficient); *Halderman v. Sanderson Forklifts Co., Ltd.*, 818 SW2d 270 (Ky. Ct. App 1991) (refusing to apply stream of commerce doctrine); *Dillaplain v. Lite Industries, Inc*., 788 S.W.2d 530 (Mo. Ct. App 1990) (holding placing of product into stream of commerce plus knowledge of ultimate destination sufficient); *Cox v. Hozelock, Ltd.*, 411 S.E.2d 640 (N. Carolina Ct. App. 1992)]. Thus, personal jurisdiction may be asserted over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by the consumer in the forum state, but not where the product's presence in that state is a single, isolated occurrence.[*Falkirk*, 906 F.2d 369]. In comparison, a corporation may be subject to the jurisdiction of

the courts of a particular state when it has purposefully injected its product into the stream of commerce without any indication that it desired to limit the area of distribution of its product so as to exclude that state. An example is where a foreign corporation has given an exclusive sales license to a licensee in the United States with no limits as to the forum state. The due process analysis is concerned with more than territory, otherwise, the presence of the defendant's product in the forum would be enough to justify the exercise of jurisdiction. However, the nature of the product may well have a bearing upon the nature and extent of the necessary minimum contacts.

*Id*. (some citations omitted).

The recent case of ***Attea v. Eristoff***, No. M2005-02834-COA-R3-CV, 2007 WL 1462206 (Tenn. Ct. App. May 18, 2007), involved a dispute between a Tennessee resident and two taxing authorities of the State of New York, arising from the Tennessee resident's business activities in New York. The Tennessee resident filed suit against the New York taxing authorities in the Chancery Court for Cheatham County, alleging that their telephone calls and letters attempting to collect the disputed taxes amounted to intentional infliction of emotional distress. The taxing authorities moved to dismiss the complaint for lack of subject matter jurisdiction, lack of personal jurisdiction, and failure to state a claim upon which relief could be granted. The trial court granted the motion after concluding that it lacked personal jurisdiction over the New York taxing authorities. The Tennessee resident appealed. This Court determined that the trial court properly concluded that it lacked personal jurisdiction and that the complaint should also be dismissed for both lack of subject matter jurisdiction and failure to state a claim upon which relief could be granted. In reaching our decision, this Court reasoned that:

The touchstone of the due process analysis is whether the non-resident defendant has purposefully established "minimum contacts" in the forum state. ***Burger King Corp. v. Rudzewicz***, 471 U.S. at 474, 105 S. Ct. at 2183; ***Int'l Shoe Co. v. Washington***, 326 U.S. at 316, 66 S. Ct. at 158. Foreseeability of causing injury in the forum state alone is insufficient to satisfy the requirements of due process. ***Burger King Corp. v. Rudzewicz***, 471 U.S. at 474, 105 S. Ct. at 2183; ***World-Wide Volkswagen Corp. v. Woodson***, 444 U.S. 286, 295, 100 S. Ct. 559, 566 (1980). Rather, the question is whether "the defendant's conduct and connection with the forum State are

such that he [or she] should reasonably anticipate being haled into court there." ***Burger King Corp. v. Rudzewicz***, 471 U.S. at 474, 105 S. Ct. at 2183; ***World-Wide Volkswagen Corp. v. Woodson***, 444 U.S. at 297, 105 S. Ct. at 567.

The United States Supreme Court has repeatedly emphasized that in making this determination, "[t]he unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." ***Burger King Corp. v. Rudzewicz***, 471 U.S. at 474, 105 S. Ct. at 2183; ***Kulko v. Superior Court of Cal. in and for City and County of San Francisco***, 436 U.S. 84, 93-94, 98 S. Ct. 1690, 1698 (1978); ***Hanson v. Denckla***, 357 U.S. 235, 253, 78 S. Ct. 1228, 1239-40 (1958). To the contrary, it is essential in each case that there be "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." ***Asahi Metal Ind. Co., Ltd. v. Superior Court of California, Solano County***, 480 U.S. 102, 109, 107 S. Ct. 1026, 1030 (1987); ***Hanson v. Denckla***, 357 U.S. at 253, 78 S. Ct. at 1240.

The trial court determined that Mr. Attea failed to show that Messrs. Eristoff and Reyes had the "minimum contacts" with Tennessee necessary to satisfy the requirements of due process. We agree. The record is devoid of any indication that Messrs. Eristoff or Reyes "purposely derived benefit" from activities within Tennessee, ***Kulko v. Superior Court of Cal. in and for City and County of San Francisco***, 436 U.S. at 94-96, 98 S. Ct. at 1698-99, or "purposely directed" their activities toward any Tennessee residents other than Mr. Attea, ***Keeton v. Hustler Magazine, Inc.***, 465 U.S. at 774, 104 S. Ct. at 1478.

***Attea v. Eristoff***, 2007 WL 1462206, at *3.

Turning to the record before us, and specifically from the undisputed Affidavit of Dream House's president John Ponte, Dream House informed Fireman prior to the January 18th closing that the mortgage would be sold and transferred out of state. Thereafter, Dream House sold the mortgage to FAM, which has its principal place of business in Tennessee. Once the mortgage arrived in Tennessee, FAM allegedly suffered damages when payments

were not made on the indebtedness it purchased. Fireman's brief argues that the product produced by Fireman consists only of legal services. While we agree that Fireman provided legal services in this case, those services included the production of legal documents, including the mortgage, promissory note, deed, and other closing papers. These were the documents upon which Dream House relied in agreeing to finance the sale. Fireman knew that Dream House was in the business of making loans to consumers and selling its mortgages in the secondary mortgage market.[6]  In its argument, Dream House relies heavily upon the fact that Fireman had knowledge that the mortgage instruments it produced would likely be sold and, by virtue of that fact, would likely end up in another jurisdiction. However, this fact, standing alone, is insufficient to confer jurisdiction on the Tennessee Court. *Burger King Corp. v. Rudzewicz*, 471 U.S. at 474 (holding that foreseeability of causing injury in the forum state alone is insufficient to satisfy the requirements of due process). Rather, there must be "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Asahi*, 480 U.S. 102, at 109. As in the *Attea* case, here the record is devoid of any indication that Fireman "purposely derived benefit" from activities within Tennessee, *Attea*, 2007 WL 1462206, at *3 (citing *Kulko*, 436 U.S. at 94-96), or "purposely directed" its activities toward any Tennessee resident. *Id*. (citing *Keeton v. Hustler Magazine*, 465 U.S. at 774). Likewise, the facts of the instant appeal indicate that, although Fireman can be charged with knowledge that its product would enter the stream of commerce, it did nothing to direct its activity toward Tennessee, nor did Fireman purposely avail itself of the privilege of doing business in Tennessee. Rather, it was only by the unilateral action of Dream House that Fireman's product came into our state. There is no indication that Fireman had any control, whatsoever, over where its product would ultimately be sold, nor is there any indication that Fireman either received a benefit from, or availed itself of the privilege of, doing business in Tennessee. Therefore, we conclude that Fireman's contacts with Tennessee are simply too tenuous to satisfy the due process requirements.

For the foregoing reasons, we reverse the order of the trial court, and remand for such further proceedings as may be necessary and consistent with this Opinion. Costs of this appeal are assessed against the Appellee, Dream House Mortgage Corporation, for which execution may issue if necessary.

---

[6] As noted by Dream House in its brief, the "secondary mortgage market" is "'the national market in which existing mortgages are bought and sold'" (quoting Black's Law Dictionary (7th Edition, p. 825)).

_____
J. STEVEN STAFFORD, JUDGE